## BRINE *v.* INSURANCE COMPANY.

1. The laws of the State in which land is situated control exclusively its descent, alienation, and transfer, and the effect and construction of instruments intended to convey it.
2. All such laws in existence when a contract in regard to real estate is made, including the contract of mortgage, enter into and become a part of such contract.
3. A State statute, therefore, which allows to the mortgagor twelve months to redeem, after a sale under a decree of foreclosure, and to his judgment creditor three months after that, governs to that extent the mode of transferring the title, and confers a substantial right, and thereby becomes a rule of property.
4. This right of redemption after sale is, therefore, as obligatory on the Federal courts sitting in equity, as on the State courts; and their rules of practice must be made to conform to the law of the State, so far as may be necessary to give full effect to the right.

APPEAL from the Circuit Court of the United States for the Northern District of Illinois.

This suit began by a bill in chancery, filed in the Circuit Court of the United States for the Northern District of Illinois, by the Hartford Fire Insurance Company, to foreclose a mortgage, in the form of a deed of trust, on a lot in Chicago. The deed was signed by Bartalott and Barbier, and their wives, and conveyed the lot to Benjamin E. Gallup, in trust to secure the payment of $7,000, loaned to them by the company, and the interest thereon as it fell due. The lot, the title whereto was in the grantors when that deed was made, was afterwards sold and conveyed by them to Samuel J. Walker. Walker sold, but did not convey, to Ida R. Brine, who, dying, left as her sole heir Ida Winter Brine.

Walker, after his sale to Ida R. Brine, — which was evidenced by a written instrument, — conveyed the lot to J. Irving Pearce, in order that the sum of $6,000, which she owed him on the contract of purchase, might be held by Pearce as security for a debt of Walker to the Third National Bank of Chicago. All the parties interested in the lot were made defendants, except the bank, whose interest was represented by Pearce

A final decree was made, which ascertained the sum due on the mortgage, and allowed defendants one hundred days to pay

it. If not paid within that time, the special master was ordered to sell the land for cash, making such sale in accordance with the course and practice of the court; and, after retaining his commissions, and paying the costs of the proceedings, deposit the remainder with the clerk, together with his report of sale, to abide the further order of the court.

From this decree Ida Winter Brine appeals.

The statute of Illinois bearing on the case is set out, and the assignment of errors mentioned in the opinion of the court.

Mr. Melville W. Fuller for the appellant.

As the mortgage or deed of trust conveyed land in Illinois, the right which the appellee acquired thereby depends upon the laws of that State in force at the time it was made. They created and defined the legal and equitable obligations of the contract which is sought to be enforced as fully as if they had been incorporated in it. A foreclosure, therefore, by suit, instituted in either the Federal or the State court, must be in accordance with them, so far as that right is involved. Bronson v. Kinzie, 1 How. 311; McCracken v. Hayward, 2 id. 608; Gantly's Lessee v. Ewing, 3 id. 707; Von Hoffman v. Quincy, 4 Wall. 535; Clark v. Reyburn, 8 id. 318; McGoon v. Scales, 9 id. 23; Doe v. Heath, 7 Blackf. (Ind.) 154; Sheets v. Peabody, id. 613; Franklin v. Thurston, 8 id. 160; Cargill v. Power, 1 Mich. 369; Malony v. Fortune, 14 Iowa, 417; Scobey v. Gibson, 17 Ind. 572; Bixby v. Bailey, 11 Kan. 359; Carroll v. Rossiter, 10 Minn. 174; Wharton, Conflict of Laws, 273, 274. Their effect is to vest in the mortgagor, or his grantee of the equity of redemption, a new estate, to continue fifteen months after the sale under a decree of foreclosure. Farrell, &c. et al. v. Parlier, 50 Ill. 274; D'Wolf et al. v. Hadyn, 24 id. 525; Campbell v. Vining, 23 id. 525.

The decree in question directs the master to sell, in pursuance of the course and practice of the court, by which for years mortgaged lands have been sold, by the marshal, without reserving after the sale any right of redemption, and of which this court will take judicial notice. Oliver v. Palmer & Hamilton, 11 Gill & J. (Md.) 426; Contee v. Pratt, 9 Md. 67; Newell v. Newton, 10 Pick. (Mass.) 470; March v. Commonwealth, 12 B. Mon. (Ky.) 25; Chitty v. Dendy, 3 Ad. & E.

319; *United States* v. *Teschmaker et al.*, 22 How. 392; *Romero* v. *United States*, 1 Wall. 721; 1 Greenl. Evid., sects. 6 and 6 *a.*

The right of redemption is a substantial one. At sheriff's sale, under the statute, the purchaser obtains a certificate which entitles him only to a deed in fifteen months therefrom, provided no redemption is made; whereas, by a sale under this decree, that right is defeated, inasmuch as he acquires a present estate in the land, and the right of immediate entry thereon, not depending upon any subsequent contingency. *Phillips* v. *Demoss et al.*, 14 Ill. 410.; *Karnes* v. *Lloyd·et al.*, 52 id. 113; *Martin* v. *Judd*, 60 id. 78.

The statute securing this right of redemption is a binding rule of property, and, when not in conflict with the Constitution, the treaties, or the laws of the United States, should be administered by the Federal as well as by the State courts. *Bronson* v. *Kinzie, supra; Clark* v. *Smith*, 13 Pet. 195; *Meade* v. *Beale,* Taney, Dec. 339; *Green* v. *Neal's Lessee*, 6 Pet. 291; *Shipp* v. *Millen's Heirs*, 2 Wheat. 316; *Thacher* v. *Powell*, 6 id. 119; *Parker* v. *Overman,* 18 How. 137; *Fitch* v. *Creighton*, 24 id. 159; *Lorman et al.* v. *Clark*, 2 McLean, 568.

*Mr. Edward S. Isham, contra.*

The statute of Illinois, invoked by the appellant, regulates the process of her courts in foreclosure cases. Having been passed in 1841, it could not have been adopted by the act of Congress of 1828 as a rule for the Federal courts. Counsel for the appellant admits that it was never adopted by the court below, or here. It has, therefore, no application to the present suit, and no error was committed by disregarding it, and adhering to the precedents of the Chancery Court of England, and to the rules of practice and procedure prescribed by Congress and the Supreme Court, or adopted by the court below. Const. U. S., art. 3, sects. 1, 2; Temporary Process Act of Sept. 24, 1789; Judiciary Act of Sept. 24, 1789, sects. 2–4; Process Act of May 8, 1792, sect. 2; Process Act of May 19, 1828, sects. 1, 3 (4 Stat. 278); Act of Aug. 23, 1842 (5 id. 516); Act of June 1, 1872, sects. 5, 6 (17 id. 197); U. S. Rev. Stat., sects. 913 to 916 inclusive; Equity Rules Supreme Court, Nos. 89, 90; *Robinson* v. *Campbell*, 3 Wheat. 212; *Sturges* v. *Crowninshield*, 4 id. 122; *Wayman* v. *Southard*, 10 id. 1; *Bank of*

*the United States* v. *Halsted*, id. 51; *Bank of Hamilton* v. *Dudley's Lessee*, 2 Pet. 492; *Boyle* v. *Zacharie*, 6 id. 348; *Ross* v. *Duval*, 13 id. 45; *Williams* v. *Waldo et al.*, 3 Scam. (Ill.) 264; *Bronson* v. *Kinzie*, 1 How. 311; *McCracken* v. *Hayward*, 2 id. 608; *Thompson* v. *Phillips*, Bald. 246; Am. Law Review, vol. i. p. 23; *Payne* v. *Hook*, 7 Wall. 425; *Cowles* v. *Mercer County*, id. 118; *Railway Company* v. *Whitton*, 13 id. 270; *Insurance Company* v. *Morse*, 20 id. 445; *Doyle* v. *Insurance Company*, 94 U. S. 535.

The courts of the United States for the districts of Illinois, in executing their decrees, do, by their own forms, modes of procedure, and process, give just and full effect to the equity of redemption, in foreclosure proceedings, so far as it constitutes an estate in the mortgagor.

A State statute which furnishes a rule of property or decision, within the meaning of the thirty-fourth section of the Judiciary Act, undoubtedly controls the contract; but " laws which relate to practice, process, or modes of proceeding before or after judgment, are exceptions to the thirty-fourth section." *Thompson* v. *Phillips*, *supra*; *Wayman* v. *Southard*, *supra*. Of the latter character is the statute in question. It relates only to the means for carrying a judgment or decree into execution; but it cannot reach the procedure and process of the courts of the United States.

The party who, in asserting his rights *ex contractu*, invokes the jurisdiction of the Federal courts is entitled to the methods and process by which it is exercised. It is urged by the appellant that the law in force when the contract is made forms a part of it. No reason can, however, be assigned why the Federal enactment establishing the forms of remedy, and the modes of proceeding in the Federal courts, does not enter into the contract with the same effect as the statutes of a State which prescribe the modes and incidents of the remedy in her own courts. If the appellee, although subject to the jurisdiction of the courts of the United States, contracted, by implication, to exclude their procedure, then those courts from time to time, and without reference to the act of 1828, must adapt their equity practice to the constantly recurring changes in State legislation.

Mr. JUSTICE MILLER, after stating the case, delivered the opinion of the court.

We will notice the errors assigned in their order.

- 1. The money borrowed of the insurance company was evidenced by a bond for the principal sum of $7,000, and the semi-annual interest by coupons attached to said bond; and the court allowed interest on such of these coupons as were due and unpaid; and this is asserted to be error. We have decided more than once in this court that such instruments are so far distinct contracts for the payment of money, that when they become due they bear interest, and may be sued on separately from the bond. *Cromwell* v. *County of Sac, supra*, p. 51.

2. It is objected that complainant was allowed in the decree premiums paid for insurance of the house covered by the mortgage. The deed of trust required the grantors to keep the property insured for the benefit of complainant; and, when they failed to do this, we think the sum paid by the trustee for such insurance is a proper charge, and a lien under the trust-deed.

3. By reason of the conveyance of the lot to Pearce, after Walker had sold to Mrs. Brine, and received $5,000 of the purchase-money, the appellant, her heir, insisted that, before final decree in favor of the complainant, the right to the equity of redemption under the trust-deed should be ascertained and settled by the court, as between her and Pearce, in order that, if she paid the insurance company's debt, she might know what she was getting for it. For this purpose she made application to be permitted to file a cross-bill; but she did not pay, or offer to bring into court, for the use of the company, the money which was due on the mortgage. The court refused to delay the decree in favor of the complainant for this purpose, but, by the decree, allowed any of the defendants to pay the money found due within a hundred days, and thus prevent the sale; and it also ordered, that if the lot sold for more than the debt, interest, and costs, the excess should be paid into court. The rights of these parties to the surplus could then be litigated.

In this we are of the opinion the court did precisely what equity and equity practice required. The complainant's debt was due, and was undisputed as a lien on the lot paramount to all others;

and the complainant had no interest in the controversy between appellant and Pearce, and should not have been delayed until the end of a long suit for a specific performance, which could not affect the right of the complainant to have its money out of the lot.

While these errors are pointed out by the counsel for the appellant, in his brief, but little is said about them; and in the full and able arguments, oral and printed, by counsel on both sides, these questions are ignored or passed over in favor of one which they deem of very great importance; and in this they have the concurrence of the court.

4 It is said by counsel for the appellant that the statutes of Illinois allow one year after sale, in such a case as the present, for redemption by the debtor, and three months after that by any judgment creditor of the debtor; making fifteen months before the purchaser has a right to his deed and to possession. It is assigned for error that this decree not only makes no provision for such redemption, but, by its terms, cuts off and defeats that right.

If the point had been raised or insisted on by the appellee, it would admit of doubt whether this question is fairly raised by the decree; for while it orders the sale of the lot, and a report to the court, it says nothing about barring the equity of redemption, nor of the making of a deed; and, but for a single phrase in the decree, it would seem that the appropriate time to raise this question would be on the confirmation of the report of sale and the order for a deed to the purchaser, which has not yet been done.   But it is conceded by counsel here on both sides, that it is according to the course and practice of the court that the master makes to the purchaser at the sale a deed for the land; which deed, by the uniform practice of the court, gives him the right to immediate possession, and cuts off all right of redemption, whether statutory or otherwise. ·

If this be true, which we have no reason to doubt, then the decree which ordered the sale to be made in accordance with the course and practice of the court does deny and defeat the right which the appellant asserts, to redeem by paying the amount of the bid, with interest, twelve months after the sale. As it is important to the holder of the equity of redemption to

know whether it is essential to the exercise of her right to redeem, that it be exercised before the sale, or can be with equal safety exercised a year later, and as the question is one of importance and frequent recurrence on the circuits, it is eminently proper that it be decided now

The statutes of Illinois in force on this subject when this mortgage was made, and for a great many years before, are found in the Revised Statutes of 1845, pages 302-305, as follows:—

"It shall be lawful for any defendant, his heirs, executors, or grantees, whose land shall have been sold by virtue of any execution, within twelve months from such sale, to redeem such land, by paying to the purchaser thereof, his executors, administrators, or assigns, or to the sheriff or other officer who sold the same, for the benefit of such purchaser, the sum of money paid on the purchase thereof, together with interest thereon, at the rate of ten per cent per annum, from the time of such sale; and on such sum being paid as aforesaid, the sale and certificate shall be null and void."

"In all cases hereafter, where lands shall be sold under and by virtue of any decree of a court of equity, for the sale of mortgage-lands, it shall be lawful for the mortgagor of such lands, his heirs, executors, administrators, or grantees, to redeem the same, in the manner provided in this chapter for the redemption of lands sold by virtue of executions issued upon judgments at common law; and judgment creditors may redeem lands sold under any such decree, in the same manner as is prescribed for the redemption of lands sold on execution issued upon judgments at common law."

It is denied that these statutes are of any force in cases where the decree of foreclosure is rendered in a court of the United States, on the ground that the equity practice of these courts is governed solely by the precedents of the English Chancery Court as they existed prior to the declaration of independence, and by such rules of practice as have been established by the Supreme Court of the United States, or adopted by the circuit courts for their own guidance. And treating all the proceedings subsequent to a decree which are necessary for its enforcement as matter of practice, and as belonging solely to the course of procedure in courts of equity, it is said that not only do the manner of conducting the sale under a decree of foreclosure,

and all the incidents of such a sale, come within the rules of practice of the court, but that the effects of such a sale, on the rights acquired by the purchaser and those of the mortgagor, and his subsequent grantees, are also mere matters of practice to be regulated by the rules of the court, as found in the sources we have mentioned.

On the other hand, it is said that the effect of the sale and conveyance made by the commissioner is to transfer the title of real estate from one person to another, and that all the means by which the title to real property is transferred, whether by deed, by will, or by judicial proceeding, are subject to, and may be governed by, the legislative will of the State in which it lies, except where the law of the State on that subject impairs the obligation of a contract. And that all the laws of a State existing at the time a mortgage or any other contract is made, which affect the rights of the parties to the contract, enter into and become a part of it, and are obligatory on all courts which assume to give remedy on such contracts.

We are of opinion that the propositions last mentioned are sound; and if they are in conflict with the general doctrine of the exemption from State control of the chancery practice of the Federal courts, as regards mere modes of procedure, they are of paramount force, and the latter must to that extent give way. It would seem that no argument is necessary to establish the proposition that when substantial rights, resting upon a statute, which is clearly within the legislative power, come in conflict with mere forms and modes of procedure in the courts, the latter must give way, and adapt themselves to the forms necessary to give effect to such rights. The flexibility of chancery methods, by which it moulds its decrees so as to give appropriate relief in all cases within its jurisdiction, enables it to do this without violence to principle. If one or the other must give way, good sense unhesitatingly requires that justice and positive rights, founded both on valid statutes and valid contracts, should not be sacrificed to mere questions of mode and form.

Let us see if the statutes of Illinois on this subject do confer positive and substantial rights in this matter.

It is not denied that in suits for foreclosure in the courts of

that State the right to redeem within twelve months after the sale under a decree of foreclosure is a valid right, and one which must govern those courts.

Nor is it pretended that this court, or any other Federal court, can, in such case, review a decree of the State court which gives the right to redeem. This is a clear recognition that nothing in that statute is in conflict with any law of the United States. If this be so, how can a court, whose functions rest solely in powers conferred by the United States, administer a different law which is in conflict with the right in question? To do so is at once to introduce into the jurisprudence of the State of Illinois the discordant elements of a substantial right which is protected in one set of courts and denied in the other, with no superior to decide which is right. *Olcott* v. *Bynum et al.*, 17 Wall. 44; *Ex parte McNeil*, 13 id. 236.

Of the soundness of the first proposition of the appellant it would seem there can, under the decisions of this court, be little doubt.

The earliest utterance of the court on the subject is found in the case of the *United States* v. *Crosby* (7 Cranch, 115), in which this explicit language is used: "The court entertain no doubt on the subject; and are clearly of opinion that the title to land can be acquired and lost only in the manner prescribed by the law of the place where such land is situated." And in *Clark* v. *Graham* (6 Wheat. 577) it said: "It is perfectly clear that no title to lands can be acquired or passed, unless according to the laws of the State in which they are situate."

In the case of *McCormick* v. *Sullevant* (10 id. 192), the court held a will devising lands in Ohio, which was made and recorded in Pennsylvania, where the devisor resided, and which was otherwise perfect, inoperative to confer title in Ohio, because it had not been probated in that State, as the law of Ohio required. "It is an acknowledged principle of law," said the court, "that the title and disposition of real property is exclusively subject to the laws of the country where it is situated, which can alone prescribe the mode by which a title to it can pass from one person to another."

In the case of *Watts et al.* v. *Waddell et al.* (6 Pet. 389), a question very much like the one before us arose. Watts was

seeking to compel Waddell to accept a deed and pay for land which he had sold him many years before, the relief sought being in the nature of specific performance. It was objected that Watts could not convey a good title to a part of the land which he claimed to receive from the heirs of Powell by a decree rendered in the Circuit Court for the District of Kentucky. And although the proper parties were before that court, and a conveyance had been made to Watts by a commissioner appointed by the court, it was held that, as no statute of Ohio recognized such a mode of transferring title, the deed of the commissioner was wholly ineffectual. It will be seen that here was a court of equity, proceeding according to its usual forms, transferring title from one party to another, both of whom were before the court, yet its decree held wholly ineffectual under the principle we are considering.

We will close these citations by using the language which had the unanimous assent of the court in the recent case of *McGoon* v. *Scales* (9 Wall. 23) : "It is a principle too firmly established to admit of dispute at this day, that to the law of the State in which land is situated must we look for the rules which govern its descent, alienation, and transfer, and for the effect and construction of conveyances."

The decree in this case, the sale made under it, and the deed made on that sale, will constitute a transfer of the title within the meaning of the principle thus laid down. Neither the purchaser at that sale, nor any one holding under him, can show title in any other way than through the judicial proceeding in this suit. These proceedings are a necessary part of the transfer of title. The legislature of Illinois has prescribed, as an essential element of the transfer by the courts in foreclosure suits, that there shall remain to the mortgagor the right of redemption for twelve months, and to judgment creditors a similar right for fifteen months, after the sale, before the right of the purchaser to the title becomes vested. This right, as a condition on which the title passes, is as obligatory on the Federal courts as on the State courts, because in both cases it is made a rule of property by the legislature, which had the power to prescribe such a rule. See *United States* v. *Fox*, 94 U. S. 315.

But there is another view of the question which is equally forcible, and which leads to the same result. All contracts between private parties are made with reference to the law of the place where they are made or are to be performed. Their construction, validity, and effect are governed by the place where they are made and are to be performed, if that be the same as it is in this case. It is, therefore, said that these laws enter into and become a part of the contract.

There is no doubt that a distinction has been drawn, or attempted to be drawn, between such laws as regulate the rights of the parties, and such as apply only to the remedy. It may be conceded that in some cases such a distinction exists. In the recent case of *Tennessee* v. *Sneed* (*supra*, p. 69), we held that, so long as there remained a sufficient remedy on the contract, an act of the legislature, changing the form of the remedy, did not impair the obligation of the contract. But this doctrine was said to be subject to the limitation that there remained a remedy which was complete, and which secured all the substantial rights of the party.

At all events, the decisions of this court are numerous that the laws which prescribe the mode of enforcing a contract, which are in existence when it is made, are so far a part of the contract that no change in these laws which seriously interfere with that enforcement are valid, because they impair its obligation within the meaning of the Constitution of the United States. *Edwards* v. *Kearzey*, *supra*, p. 595. That this very right of redemption, after a sale under a decree of foreclosure, is a part of the contract of mortgage, where the law giving the right exists when the contract is made, is very clearly stated by Mr. Chief Justice Taney, in the case of *Bronson* v. *Kinzie*, 1 How. 311. That case was one which turned on the identical statute of Illinois which is invoked by the appellant in this case. The mortgage, however, on which that suit was founded was made before the statute was passed; and the court held, that, because the statute conferred a new and additional right on one of the parties to the contract, which impaired its obligation, it was for that reason forbidden by the Constitution of the United States, and void as to that contract. But the Chief Justice, in delivering the opinion, further declared, that, as to all contracts

made after its enactment, the statute entered into and became a part of the contract, and was therefore valid and binding in the Federal courts as well as those of the State. As it is impossible to state the case and the doctrine applicable to the case before us any better, we give the language of the court on that occasion : —

" When this contract was made," said the court, " no statute had been passed by the State changing the rules of law or equity in relation to a contract of this kind, and it must, therefore, be governed, and the rights of the parties under it measured, by the rules above stated. They were the laws of Illinois at the time, and, therefore, entered into the contract, and formed a part of it, without any express stipulation to that effect in the deed. Thus, for example, there is no covenant in the instrument giving the mortgagor the right to redeem by paying the money after the day limited in the deed, and before he was foreclosed by the decree of the Court of Chancery: yet no one doubts his right or his remedy ; for, by the laws of the State then in force, this right and this remedy were a part of the law of the contract, without any express agreement of the parties." Speaking of the law now under consideration, he said : " This law gives to the mortgagor and to the judgment creditor an equitable estate in the premises, which neither of them would have been entitled to under the original contract ;' and these new interests are directly and materially in conflict with those which the mortgagee acquired when the mortgage was made." " Mortgages made since the passage of these laws must undoubtedly be governed by them ; for every State has the power to prescribe the legal and equitable obligations of a contract to be made and executed within its jurisdiction. It may exempt any property it thinks proper from sale for the payment of a debt, and may impose such conditions and restrictions upon the creditor as its judgment and policy may dictate. And all future contracts would be subject to such provisions, and they would be obligatory on the parties in the courts of the United States, as well as in those of the State."

In *Clark* v. *Reyburn* (8 Wall. 318), the court, in recognition of the doctrine that the statute becomes a part of the contract, uses this language: " In this country, the proceeding in most of

the States, and perhaps in all of them, is regulated by statute. The remedy thus provided, when the mortgage is executed, enters into the convention of the parties, in so far that any change by legislative authority which affects it substantially, to the injury of the mortgagee, is held to be a law 'impairing the obligation of the contract,' within the meaning of the provision of the Constitution upon the subject."

We are not insensible to the fact that the industry of counsel has been rewarded by finding cases even in this court in which the proposition that the rules of practice of the Federal courts in suits in equity cannot be controlled by the laws of the States, is expressed in terms so emphatic and so general as to seem to justify the inference here urged upon us. But we do not find that it has been decided in any case that this principle has been carried so far as to deny to a party in those courts substantial rights conferred by the statute of a State, or to add to or take from a contract that which is made a part of it by the law of the State, except where the law impairs the obligation of a contract previously made. And we are of opinion that Mr. Chief Justice Taney expressed truly the sentiment of the court as it was organized in the case of *Bronson* v. *Kinzie*, as it is organized now, and as the law of the case is, when he said that " all future contracts would be subject to such provisions, and they would be obligatory upon the parties in the courts of the United States as well as those of the States."

It is not necessary, as has been repeatedly said in this court, that the form or mode of securing a right like this should follow precisely that prescribed by the statute. If the right is substantially preserved or secured, it may be done by such suitable methods as the flexibility of chancery proceedings will enable the court to adopt, and which are most in conformity with the practice of the court. *Ex parte McNeill*, 13 Wall. 236. In the case before us no better mode occurs to us than that prescribed by the statute; namely, that the master making the sale shall give to the purchaser a certificate of the sale, with the sum at which the land was sold, and a statement that, unless redeemed within fifteen months by some one authorized by the law to make such redemption, he will be entitled to a

deed. The matter being thus reported to the court, it can, at the end of the time limited, make such final decree of confirmation and foreclosure of all equities as are necessary and proper; or, if the land be redeemed, then such other decree as the rights of the parties consequent on such redemption may require.

The decree of the Circuit Court will be reversed, so far as it requires the sale to be made in accordance with the course and practice of the court, and the case remanded with directions to modify the decree, by making provision for the sale and redemption in conformity to this opinion; and it is

*So ordered.*

MR. JUSTICE HARLAN dissented.