# EAST CENTRAL EUREKA MINING COMPANY *v.* CENTRAL EUREKA MINING COMPANY.

## ERROR TO THE SUPREME COURT OF THE STATE OF CALIFORNIA.

No. 141.   Argued January 8, 9, 1907.—Decided January 21, 1907.

The requirement of parallelism of the end lines of a mining claim in § 2 of the act of May 10, 1872, 17 Stat. 91, Rev. Stat., par. 2320, does not apply to a patent issued on an application made prior to the passage of that act.

Where the construction by the land office of an act of Congress in regard to mining claims agrees with the decisions of the Circuit Court and the state courts, unless the meaning of the act is plainly the other way, this consensus of opinion and practice must be accorded considerable weight.

Section 3 of the act of May 10, 1872, is to be construed broadly in favor of the right of a claimant who had located prior thereto to follow all veins apexing within the surface of his claim in view of the provisions of §§ 12 and 16 that the act should not impair rights or interests acquired under the existing laws.

In the construction and effect of a conveyance between private parties this court follows the state court.

146 California, 147, affirmed.

THE facts are stated in the opinion.

*Mr. Jackson H. Ralston,* with whom *Mr. Philip G. Galpin, Mr. Frederick L. Siddons* and *Mr. William E. Richardson* were on the brief, for plaintiff in error:

Defendant in error acquired no title under act of May, 1872, Rev. Stat. § 2320, because the end lines of patent were not parallel. *Iron Silver M. Co.* v. *Elgin Mining & S. Co.,* 118 U. S. 196; *Del Monte M. & M. Co.* v. *Last Chance M. & M. Co.,* 171 U. S. 66.

At the date of the passage of the act of 1872 the defendant had acquired no existing right, under the act of 1866, to have extralateral rights on a claim with converging end lines.

Where an applicant for public land had entered his land

in the Land Office and paid his money and nothing remained to complete his title but issue of a patent, the delay of the Land Office or repeal of the law before patent issued could not deprive him of his "existing right." But, until he had made the payment of money his right did not attach. The settled rule is that until the legal title has passed, or the locator has acquired by payment of money some vested right the public lands are within the jurisdiction of the Land Department and Congress retains control. *Diffenbach* v. *Hoch,* 115 U. S. 592; *Davis* v. *Wiebold,* 139 U. S. 239.

No rights of a locator against the Government accrued to be upheld as a vested right until the Government surveyor had made the survey and the surveyor-general had approved it. Before that time the power of the surveyor to make a survey in this manner so as thereby to give extralateral rights had been cut off and he was bound to survey under the act of 1872, and according to its directions. He should have made the end lines parallel. He could only survey as the act of 1872 required. His disobedient act conferred no rights to be upheld after repeal of act of 1866. *Cragin* v. *Powell,* 128 U. S. 691.

The same principle applies to mineral lands also.

So it was held in *Del Monte M. & M. Co.,* 171 U. S. 70.

The same section of the Revised Statutes which limited the effect of the patent to a conveyance of 300 feet on each side of the ledge declared that the end lines of the claim should be parallel. The courts have decided that unless parallel, the claim carried no extralateral rights. See also *Larkin* v. *Roberts,* 54 Fed. Rep. 461; *S. C.,* 154 U. S. 507.

*Mr. S. S. Burdett,* with whom *Mr. Curtis H. Lindley* and *Mr. Henry Eickhoff* were on the brief, for defendant in error.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is a writ of error to reverse a decree in favor of the defendant in error, the original plaintiff and hereinafter called

the plaintiff, which was ordered by the Superior Court and affirmed by the Supreme Court of California. 146 California, 147. The decree was made on a bill to quiet title, upon the following facts, which appeared at the trial of the case. The plaintiff is the owner of the "Summit Quartz Mine" in California. The apex of a vein runs through this mine between and nearly parallel with the surface side lines. This vein dips under the easterly side line and enters the adjoining land of the defendants, known as the Toman ranch. The controversy concerns the portion of the vein under the defendants' land. The main ground of defense is that the end lines of the mine are not parallel but converge towards each other in the direction of the ranch, and that the plaintiff's patent was granted on November 25, 1873, when the act of May 10, 1872, c. 152, 17 Stat. 91, Rev. Stats. §§ 2320, 2322, was in force. *Iron Silver Mining Co.* v. *Elgin Mining & Smelting Co.*, 118 U. S. 196; *Del Monte Mining & Milling Co.* v. *Last Chance Mining & Milling Co.*, 171 U. S. 55, 67. But the patent was issued upon an application made on February 7, 1871, based upon two locations of March 20, 1863, and June 22, 1865, respectively. The question is whether the requirement of parallelism in § 2 of the act of 1872, Rev. Stat. § 2320, applies to such a case.

The patent of the mine recites proceedings in pursuance of the acts of 1866, 1870 and 1872, and describes and grants the premises by metes and bounds, and the exclusive right of possession and enjoyment of the same and of $1,165\frac{56}{100}$ linear feet of the vein throughout its entire depth, although it may enter the land adjoining, with similar rights in other veins having their apex within the surface bounds; the extralateral or outside rights in the veins being confined, as by the act of 1872, § 3, to such portions as lie between vertical planes drawn downward through the end lines of the survey at the surface, and so continued in their own direction as to intersect the exterior part of the veins. In short, the patent purports to convey the rights claimed by the plaintiff in this suit, and

also the additional rights that would have been gained by a location and patent under the act of 1872 alone. The defendants derive title from later patents issued under the laws of the United States concerning the sale of agricultural land, and admit that, if the plaintiff's patent conveyed what it purported to convey, then, subject to a question to be mentioned later, the plaintiff must prevail.

Before the act of 1872 it was not required that the end lines should be parallel; 118 U. S. 208; and when, with some dissent, it was decided that that requirement of that act made a condition to the right of a patentee to follow his vein outside of the vertical planes drawn through his side lines, the decision was confined in terms to cases where the location was made since the passage of the act. 118 U. S. 208. That there is no such condition when the patent was issued in pursuance of proceedings under the earlier statutes has been decided, so far as we know, when the question has arisen. See e. g. Argonaut Mining Co. v. Kennedy Mining & Milling Co., 131 California, 15; Carson City Gold and Silver Mining Co. v. North Star Mining Co., 83 Fed. Rep. 658, 669. The granting of the patent indicates what we believe to be a fact, that the construction of the act of 1872 adopted at the time by the land office agreed with the decisions of the courts. Unless, therefore, the meaning of the act of 1872 is pretty plainly the other way, this consensus of opinion and practice must be accorded considerable weight.

Apart from the last mentioned considerations we are of opinion that the act of 1872 authorized the plaintiff's patent. Under the former law the miner located the lode. Calhoun Gold Mining Co. v. Ajax Gold Mining Co., 182 U. S. 499, 508. When the act of 1872 substituted the location of a piece of land by surface boundaries, it preserved the rights of locators to all mining locations previously made in compliance with law and local regulations, and provided that they should "have the exclusive right of possession and enjoyment of all the surface included within the lines of their locations, and of

all veins, lodes, and ledges throughout their entire depth, the top or apex of which lies inside of such surface-lines extended downward vertically, although such veins, lodes, or ledges may so far depart from a perpendicular in their course downward as to extend outside the vertical side-lines of said surface locations." Section 3. Rev. Stats. 2322. It is argued that this refers only to possessory rights, and that when a patent was applied for it was required to conform to the new law; that under the old law the miner got but a single vein, while the new law gave him all veins having their apex within the surface, and that when he accepted this advantage he had to comply with the conditions, as otherwise he would be given a preference over later comers. It is said further that in the present case no rights had been acquired. These arguments do not command our assent, for reasons which we will state.

A broader construction of the passage quoted from § 3 is favored by other provisions in the act. It provided that the repeal of certain sections of the act of 1866 "shall not affect existing rights. Applications for patents for mining claims now pending may be prosecuted to a final decision in the General Land Office; but in such cases when adverse rights are not affected thereby, patents may issue in pursuance of the provisions of this act." Section 9. So in § 12: "Nor shall this act affect any right acquired under said act" (of 1866). And in § 16, "Provided that nothing in this act shall be construed to impair, in any way, rights or interests in mining property acquired under existing laws." Whatever ambiguity may be found in the first of these quotations, the last is plain. The chance of a possible advantage to outstanding applicants does not seem to us to outweigh the injustice of preventing them from getting what the law had promised as the reward for the steps they had taken in accordance with its invitation.

The provision that the act shall not impair existing rights is, perhaps, some indication that it extends to inchoate rights which constitutionally it might have impaired. At all events

it should be taken in a liberal sense. There was no sufficient reason why the United States should not be liberal and, as we have said, it was just that it should be. We are of opinion that in the present case rights had been acquired within the meaning of the act. It is said that the survey of the mineral patent was not approved or payment made to the United States until after the passage of the act, of 1872. But the location had been made and the proceedings under the act of 1866 so far advanced as to exclude adverse claims. The locator had done all that he could do, and we are satisfied that the act of 1872 intended to treat parties that were in that position as having rights that were to be preserved. If Congress were unrestricted by the Constitution the word "rights" still would be the natural word to express the relation of persons to this kind of property where the facts required the officers of the Government to take the steps necessary to permit them to acquire it and they were seeking to acquire it and had manifested their intent and desire by occupation, labor and expenditures. Yet on that supposition there could be no technically legal right. We believe that Congress used the word in a somewhat popular sense, as no doubt it would have used it in the case supposed, without considering what injustice might be within its constitutional power to commit. See *Clipper Mining Co.* v. *Eli Mining & Land Co.,* 194 U. S. 220; *Creede & Cripple Creek Mining & Milling Co.* v. *Uinta Tunnel Mining & Transportation Co.,* 196 U. S. 337, 342.

The plaintiff is not responsible for the form of the patent. It grants the rights that would have been granted under the act of 1866, and the fact that it also purports to grant all that would have been acquired by a location under the act of 1872 does not import an election by the grantee to abandon the former. We do not mean to disparage the additional grant, but, as was pointed out by the California court, the question before us does not touch that point.

The defendants rely, for a further defense, upon a quitclaim deed, from the plaintiff, of the land under which lies the por-

tion of the vein in dispute. The land was described as lying east of the mining ground known as the Summit Quartz Mine. Assuming, in accordance with its decision, that the part of the vein under this land was embraced in the patent to the plaintiff and severed from the surface, the California court held that this instrument did not purport to convey the portion of the vein beneath the surface and within the converging lines, produced, of the plaintiff's location. The court also adverted to the fact, which sufficiently appeared, that the real object of the deed was to free the defendants' title from a previous contract on their part to convey the land, and simply to replace the grantees in their former position; and it sustained a finding of the court below. The construction and effect of a conveyance between private parties is a matter as to which we follow the court of the State. *Brine* v. *Hartford Fire Ins. Co.*, 96 U. S. 627, 636; *De Vaughn* v. *Hutchinson*, 165 U. S. 566. The assumption upon which that construction proceeded we have decided to be correct, and it is enough to add that there is nothing in the decision rendered last week in *Montana Mining Co.* v. *St. Louis Mining & Milling Co.*, *ante*, p. 204 that prevents our agreeing with the result.

*Judgment affirmed.*