CITY OF OMAHA v. OMAHA WATER CO.†

(Circuit Court of Appeals, Eighth Circuit. November 2, 1911.)

No. 3,539.

1. COURTS (§ 367*)—FEDERAL COURTS—FOLLOWING STATE DECISIONS.

The decisions of the highest court of a state as to the nature and extent of the rights of mortgagees of property therein are binding in the federal courts.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 958, 959; Dec. Dig. § 367.*

Conclusiveness of judgment between federal and state courts, see notes to Kansas City, Ft. S. & M. R. Co. v. Morgan, 21 C. C. A. 478; Union & Planters' Bank v. City of Memphis, 49 C. C. A. 468.]

2. MORTGAGES (§ 137*) — RIGHTS OF MORTGAGEES — LAW OF NEBRASKA — "OWNER."

Under the decisions of the Supreme Court of Nebraska, mortgagees of property in that state have an estate in the property mortgaged separate and distinct from that of the mortgagors, and are comprehended within the term "owner" in cases where "owners" are required to be made parties to suits.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 270–276; Dec. Dig. § 137.*

For other definitions, see Words and Phrases, vol. 6, pp. 5134–5151; vol. 8, p. 7744.]

8. SPECIFIC PERFORMANCE (§ 96*)—SUIT BY VENDOR—INTEREST—SUFFICIENCY OF TENDER.

By an ordinance of the city of Omaha, granting a franchise to complainant water company, the city was given the right at its election to purchase the property of the company at a valuation to be fixed by appraisers. Notice of such election was given by the city, and appraisers were appointed who made a report fixing the value of the property, whereupon complainant tendered a deed conveying the property to the city and demanded payment of the value fixed by the appraisers which was refused and complainant then commenced suit to enforce specific performance. At the time of the tender and subsequent suit there were outstanding mortgages of record on the property made by complainant, but neither party made mention of them in its pleadings and the mortgagees were not made parties. Held that, under the law of Nebraska, they had rights in the property which could only be cut off by making them parties, and that the tender of the deed by complainant did not entitle it to the purchase price or put the city in default so as to start the running of interest even though it did not plead such defect of parties as a defense to the suit.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 278–285; Dec. Dig. § 96.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

† Rehearing denied January 27, 1912.

4. SPECIFIC PERFORMANCE (§ 101.*)—SUIT BY VENDOR—INTEREST—SUFFICIENCY OF TENDER OF DEED.

In such case, as the duty rested on complainant at all times to place itself in a position to offer a good and unincumbered title before it was entitled to demand the purchase money, the city was not estopped to rely on the insufficiency of the tender at any time by failing to make the objection when the tender was made or in its pleadings and a decree for specific performance after the mortgagees have been brought in and their interests protected, will treat the transfer as having been made at that date, without requiring defendant to pay interest, or complainant to account for earnings during the pendency of the suit.

[Ed. Note.—For other cases, see Specific Performance, Dec. Dig. § 101.*]

Appeal from the Circuit Court of the United States for the District of Nebraska.

Suit in equity by the Omaha Water Company against the City of Omaha. Decree for complainant, and defendant appeals. Modified.

John L. Webster and William D. McHugh (John A. Rine, on the brief), for appellant.

Howard Mansfield and John F. Stout (Herbert C. Lakin, on the brief), for appellee.

Before ADAMS and SMITH, Circuit Judges, and REED, District Judge.

ADAMS, Circuit Judge. This was an appeal from a decree entered by the Circuit Court upon the mandate of the Supreme Court in the case of the City of Omaha v. Omaha Water Company, 218 U. S. 180, 30 Sup. Ct. 615, 54 L. Ed. 991, which affirmed the decree of this court in the case of the Omaha Water Company v. City of Omaha. 89 C. C. A. 205, 162 Fed. 225. In view of the history of this litigation disclosed in the cases just referred to, little need be said about the facts. Suffice it to say that, in the contract between the city and the water works company whereby the latter acquired a franchise to occupy the streets of the city and supply it and its inhabitants with water, the right was reserved to the city to purchase the waterworks at any time after the expiration of 20 years, at an appraised valuation to be made by three engineers to be selected in the way designated in the contract. After the 20 years expired, the city duly elected to exercise that right, the three appraisers were appointed, and on July 7, 1906, after a lengthy and laborious hearing they reported the waterworks to be of the value of $6,263,295.46. On July 9th the water company tendered a deed to the city conveying to it the waterworks, and demanded the payment of the value fixed by the appraisers. This was refused, and the water company brought this action against the city, setting up the foregoing facts, and praying that the latter be decreed to perform its part of the contract by paying to the water company the appraised value of $6,263,295.46. At the time this suit was begun the system of waterworks was subject to the incumbrance of two mortgages both executed by the water company on July 23, 1896. one to the Guaranty Trust Company, as trustee, to secure the payment of bonds aggregating $1,500,000, the other to the Farmers'

Loan & Trust Company, as trustee, to secure the payment of bonds aggregating $6,000,000. This last was a consolidated mortgage. The amount due and unpaid on these bonds was and now is considerably less than the appraised value of the works. The water company did not make either of the trustees in the mortgages party to this suit, and omitted to disclose in its pleadings the existence of any incumbrances. The city answered making no mention of the prior incumbrances but basing its defense upon these grounds: (1) Because only two of the appraisers agreed to the valuation; (2) because the appraisers examined certain books and records of the water company in the absence of a representative of the city; (3) because certain property in East Omaha, South Omaha, Dundee, and Florence was valued by the appraisers and included in the property to be transferred to the city; (4) because a "going value" was taken into consideration by the appraisers. For these reasons the city contended that the appraisement was void, and that specific performance based thereon should not be decreed against it. The Circuit Court held these defenses or some of them good, and ordered the bill dismissed. This court and the Supreme Court held none of these defenses were good, and ordered the Circuit Court to enter a decree of specific performance as prayed for.

Although neither party pleaded the prior incumbrances the existence of such incumbrances was fully brought out in the proof and their effect was argued by counsel and considered in the opinion of this court (162 Fed. 225, 89 C. C. A. 205). It was there said by Hook, Circuit Judge, speaking for the court:

"At some time during the progress of the cause in the trial court the trustees of the mortgages should be made parties, to the end that the precise amount of outstanding bonds may be ascertained and paid and the liens discharged concurrently with payment by the city of the purchase price."

Pursuant to the Supreme Court mandate the Circuit Court proceeded to enter a decree, and, among other things, ordered the defendant city to pay the water company the appraised value of the works, $5,263,295.46, with interest thereon at the statutory rate in Nebraska of seven per cent. per annum from and after July 9, 1906, the date the water company tendered the deed to the city; and ordered the water company to account to the city for its net earnings from and after the same date. A master was appointed to take an accounting of net profits and the water company was required pending the accounting, to make the trustees in the two mortgages parties to the suit (unless certain other arrangements could be made to bring about a voluntary release of the mortgages) to the end, as specified in the decree, of insuring payment of the outstanding bonds out of the purchase price to be paid by the city.

Several minor matters have been discussed by counsel, but the assignment of error chiefly argued, and the one which, if decided favorably to the city, supersedes the necessity of considering the others, is this: Whether the Circuit Court was right in requiring the city to pay the water company interest on the appraisers' award from and after July 9, 1906, when the deed was tendered.

The ordinance which constituted the original contract obligated the

water company, in case of election by the city to purchase the works, to convey to the city a good and unincumbered title thereto; and the covenants to make the conveyance by the one and to pay the price by the other were mutual and dependent. These propositions are either conceded by counsel or not controverted. The ability, therefore, to convey an unincumbered title to the works and an offer to do so were conditions necessary to create a liability against the city for the purchase price.

We pass, therfore, to the question whether the water company was able and ready to convey such a title on July 9, 1906, and whether on that day it tendered a deed or conveyance to the city of it. The two mortgages were originally recorded in the proper land office, and on July 9, 1906, remained unsatisfied of record, and in fact still so remain. Before their execution or recording the city had acquired the right to purchase the works, and this, by due exercise of the option reserved to it, became irrevocable. This right was therefore superior to the mortgages, and the mortgagees accepted their security subject to it. For this reason, it is contended the mortgages constituted no incumbrance, so far as the city was concerned, and, acting on this theory, the water company at the time of tendering its deed to the city made no provision for the payment of the mortgages, but tendered a deed absolute in its terms, leaving the mortgages standing unsatisfied of record. Did they constitute an incumbrance upon the waterworks property at the time?

[1, 2] The decisions of the Supreme Court of Nebraska concerning the nature and extent of the estate or rights of mortgagees in mortgaged property are controlling upon us (Brine v. Insurance Company, 96 U. S. 627, 24 L. Ed. 858; East Central, etc., Co. v. Central Eureka Co., 204 U. S. 266, 27 Sup. Ct. 258, 51 L. Ed. 476; Olmsted v. Olmsted, 216 U. S. 386, 30 Sup. Ct. 292, 54 L. Ed. 530, 25 L. R. A. [N. S.] 1292), and according to those decisions, mortgagees of property in Nebraska have an estate in the property mortgaged separate and distinct from that of the mortgagors, and are comprehended within the term "owner" in cases where "owners" are required to be made parties (Gerrard v. Omaha, etc., R. R. Co., 14 Neb. 270, 15 N. W. 231; Dodge v. Omaha, etc., R. R. Co., 20 Neb. 276, 29 N. W. 936; Rieck v. City of Omaha, 73 Neb. 600, 103 N. W. 283; State of Nebraska v. Missouri Pacific Ry. Co., 75 Neb. 4, 105 N. W. 983). These were condemnation cases in which the right of eminent domain was asserted. Mortgagees and others who had taken their titles subject to the possible exercise of this right were not made parties to the suits. The court held them to have had an interest in the property which could not be divested by the exercise of the right of eminent domain unless they were made parties, and that even though the award had been paid over to the mortgagors the mortgagees might afterwards proceed with foreclosure, unaffected by the condemnation proceedings.

In State of Nebraska v. Missouri Pacific Ry. Co., supra., the Supreme Court made use of these words:

"There can be no doubt that under our statute the railway company might protect itself by making lienholders parties to the proceedings, and if it neg-

lects to do this, and allows the holder of the fee to obtain the entire award, it cannot afterwards insist that the lienholders shall, by such proceeding, be deprived of their interest in the property."

The fact that the right of eminent domain was acquired by law, and the right to purchase the waterworks was acquired by contract, can in our opinion make no difference in the rights of mortgagees who took title after the accruing of the primary right. These mortgages interposed obstacles to alienation, and must be taken into consideration at least in the state of Nebraska when the conveyance of an unincumbered title in fee simple is sought to be made.

[3] The water company tendered a deed to the city, ignoring the rights of its mortgagees and demanded the agreed purchase price. If in 1906 the water company, instead of mortgaging its work as it did, had conveyed all its right, title, and interest therein to a third person, the vendee would undoubtedly have taken his right, title, and interest subject to the then existing reserved right of the city to purchase the works. In such case could it be contended for a moment that a deed from the water company to the city without a reconveyance from the vendee or a joinder in the deed by him would have conveyed a good unincumbered title to the city and entitled the water company to recover the purchase price from the city? We think the question answers itself. No more, in our opinion, would a deed from the water company without a reconveyance or some other divestiture of the outstanding mortgagees' title, have conveyed to the city a good unincumbered title or would the tender of such a deed have entitled the water company to the agreed purchase price, or put the city in default so as to start the running of interest on that price.

It is argued, however, that the fault was with the city because it failed to plead the existence of the mortgages and the consequent defect of parties as a defense to the suit for specific performance, but relied on other defenses. To this we are unable to give our assent. As the satisfaction and removal of these incumbrances could have been, as indeed they were, provided for in the decree, the incumbrances themselves did not constitute an insurmountable obstacle to the maintenance of the suit for specific performance.

It is common practice, in cases of large incumbrances like those here in question, where from the nature of things and the necessities of the parties they could not be satisfied without resort to the proceeds of a sale, to accomplish the desired objects by decretal orders making application of the purchase money to satisfy the incumbrances before any part of it is turned over to the owner or mortgagor. Guild v. Railroad Co., 57 Kan. 70, 45 Pac. 82, 33 L. R. A. 77, 57 Am. St. Rep. 312.

In Jones on Mortgages, § 708, it is laid down and sustained by abundant authority there cited that: "When the mortgaged property has been turned into money, or a claim for money in any way, as, for instance, by the taking of the property for public uses, or for the use of a corporation under authority of law, the rights of the mortgagee remain unaltered, and he is entitled to have the money in place of the land applied to the payment of his claim."

These propositions are so plainly equitable and just that learned counsel make the following concession in their brief:

"Courts of equity under such circumstances as in the present case will naturally make provision for the payment of the mortgage indebtedness out of the proceeds of sale, to which the bondholders are necessarily relegated in lieu of the property acquired by the municipality by a title superior to that of the mortgagees."

Charged with full knowledge of the existence of the mortgages and of the equitable principles just referred to, the water company brought this suit without making the mortgagees parties defendant, but in the progress of the trial the court being advised of their existence and of the prior equitable claim of the mortgagees to the fund and of the peril to the city in the event the rights of the mortgagees were ignored, made use of its unquestioned powers to require the mortgagees to be brought into the case before the final disposition of the purchase price.

[4] As the burden was on the water company to offer a good and unincumbered title before the obligation to pay the purchase price arose, and as this burden could not be discharged without the intervention of the court, and as that could not be secured without the presence of the parties holding the incumbrances, it is very clear that the duty from the beginning and at all times rested upon the water company to bring in those parties.

The fact that the city made its affirmative defense to the suit for specific performance on other grounds than the existence of the mortgages is of no legal significance. It knew the court would make and might well have relied on the court making some provision to safeguard it against the mortgages. A different question is here presented than would have been presented if at the time of the tender of the deed the city had declined to accept it on specific grounds stated, without mentioning the mortgages. In such case the existence of the incumbrances might not have been an available ground for challenging the tender. Beiseker v. Moore, 98 C. C. A. 272, 174 Fed. 368. But here we have no such question. Counsel for the water company say in their brief:

"At the time of the tender of this deed the president of the water company demanded payment of the appraised valuation. Payment and acceptance of the deed were refused without any statement from either the mayor or chairman of the Water Board of any grounds."

The sufficiency, therefore, of the tender to create the obligation of immediate payment was left open. The city elected to stand on its rights whatever they were, and is not now estopped from asserting any and all reasons it may have, why the tender was insufficient.

We think, also, for another reason, the Circuit Court erred in imposing the obligation upon the city to pay interest. This court summed up the whole matter when it said:

"That the deed tendered by the company was not such as the city was required to take is immaterial. It is sufficient" (as a prerequisite to a decree for specific performance which was the only subject then under consideration) "that the company was able, ready, and willing to do what might law-

fully be required of it. At some time during the progress of the cause in the trial court, the trustees of the mortgages should be made parties, to the end that the precise amount of outstanding bonds may be ascertained and paid and the liens discharged concurrently with payment by the city of the purchase price."

This we think is in effect a declaration by the court and a direction to the trial court that the mortgages constituted such liens upon the property as had to be discharged before anything was payable to the mortgagor. This constituted the law of the case, and its necessary consequence is that never up to the present time has the water company been able to convey a good unincumbered title and has never tendered to the city a good and sufficient deed to the waterworks. The city has not yet been put in default. The water company is relying upon the court in the procedure of the case to work out for it what it has never been able to do for itself.

Moreover, it seems to us in a case like this that the interests of the parties are best served by requiring the party beneficially interested to keep possession of the works and operate them on its own account. This obviates a long and troublesome accounting, and secures a conduct of business more likely to be profitable than would be the case if the water company should be required to hold and operate the works for account of another.

That portion of the decree which charged the city with interest on the award from July 9, 1906, was, in our opinion, erroneous. The decree is accordingly reversed and the cause remanded to the Circuit Court with direction to so modify it as to eliminate the charge of interest against the city and relieve the water company from the obligation of accounting to the city for the net proceeds of the operation of the works.