## EL BANCO POPULAR, Plff.,

*v.*

## ELIAS B. WILCOX, Dft.

San Juan, Equity, No. 946.

EQUITY PLEADING.

Equity—Motions to Strike and to Dismiss.
    1. A motion in an equity suit to strike papers from the files and

El Banco Popular v. Wilcox.

a motion to dismiss the complaint are distinct; the former relates generally to formal matters, while the latter takes the place of the old demurrer.

Equity—Cross-Bills not Abolished.

2. Cross bills have not been abolished by the new equity rules; all defenses or claims, however, which arise out of the same transaction sued on by plaintiff fall within the scope of rule 30, and should be pleaded in the answer by way of set-off or counterclaim.

Foreclosure—Defenses.

3. The only defenses that may be interposed to a suit in equity to foreclose a mortgage are those provided for in art. 175 of the regulations to the mortgage law.

Opinion filed January 28, 1916.

Mr. *Willis Sweet* for plaintiff.

Messrs. *Damian Monserrat, Jr.,* and *Jos. Anderson, Jr.,* for defendant.

HAMILTON, Judge, delivered the following opinion:

The original pleading in this litigation was filed in a local court, and the case was removed to the Federal court, where a bill to foreclose was filed June 9, 1914, designed to conform to Federal equity practice. The bill alleges that on July 29, 1909, one Rafael Lopez Landron and wife executed a mortgage for one year to the plaintiff for $4,600, together with interest and attorneys' fees, and that the mortgage was duly registered at San Juan. That on December 3, 1912, the said grantors executed a further mortgage to plaintiff for $1,700, also for one year, with similar stipulations. This mortgage was also

registered at San Juan. That the mortgaged property in question consists of a house and lot on Park street in Santurce, and that on January 14, 1913, the said Landron and wife sold the property to defendant Wilcox by a deed which assumed the debts and mortgage liens, which deed was also duly recorded at Santurce. That the total sum at the time of the filing of the bill amounted to $7,549.58, and was due and unpaid.

On July 20, 1914, defendant Wilcox filed an answer denying many of the allegations of the bill, but alleging that the deed to him was made as an accommodation to both the plaintiff and to Landron, in order to prevent a forced sale of the property under judgment obtained by the defendant and his partner, Willis Sweet, and that some of the provisions of the written instrument did not carry out the agreement made, defendant having only a fair knowledge of the Spanish language. On the same day defendant also filed a cross bill, setting out many of the same facts in greater detail, and in particular that he had no knowledge that he was to assume the mortgages claimed. That the mortgage is null and void under § 1998 of the Revised Statutes of Porto Rico, because it was drawn by the president of the plaintiff company acting as a notary public, and because said Monserrat is also a stockholder in said bank. The prayer of the cross bill is that the mortgage and its registration be declared null and void, and for general relief.

On November 15 plaintiff filed a motion to dismiss the answer because it states no defense either under the mortgage law or in equity, and is not drawn in accordance with equity rule No. 30, and also to dismiss the cross bill because it contains only matter which should have been set up in an answer, is defective as to parties in omitting Landron and wife, and seeks no relief other

than a defense. On October 26 defendant files a motion for decree *pro confesso* upon the cross bill and also a motion to dismiss the bill of complaint because of lack of replication.

1. The matter of decree *pro confesso* is not pressed, although it is not conceded that the new equity rules abolish the necessity for replication. In point of fact, under equity rule 31, if the answer includes a set-off or counterclaim, the reply is required within ten days, and in default thereof a decree *pro confesso* may be entered as in default of an answer to the bill. However, as this motion is not insisted upon, it is considered waived.

2. Plaintiff, however, contends that the alleged crossbill should be dismissed on the ground that equity rule 30 dispenses with that pleading for the future, and limits the equity pleading in that regard to set-off or counterclaim expressed in the answer itself. It may be doubted whether the new equity rules go so far as to abolish cross bills, although undoubtedly the rules lessen their frequency. In 29 Harvard L. Rev. 55, it appears that the new equity rules have been construed differently in different jurisdictions. In some districts some of the rules are enforced to a very limited extent, and the whole subject is as yet in an unformed condition. The rules were effective February 1, 1913, and the Federal Reporter since that time shows a number of decisions based upon cross bills. For instance, in United States v. Woods, 138 C. C. A. 578, 223 Fed. 316, decided as late as April 28, 1915, there is a cross bill. It is there held that under equity rule 30 the cross bill is not in the nature of a counterclaim and the cross bill was dismissed in the district court, and this was affirmed in the circuit court of appeals. The propriety of setting up a set-off or counterclaim by a cross bill, however, is not questioned. The point is, perhaps,

VIII. Porto Rico—28.

not material, as the new rules are designed to make the practice simpler and more flexible, so that if a paper labeled a cross bill should more properly have been made a part of the answer, this course might be pursued.

3. The defendant, however, sets up that the motions to dismiss answer and cross bill are but repetitions of what was formerly sought under a different name and decided adversely by the court on July 28 as motions to strike the same papers. This, however, does not follow. A motion to strike is based upon grounds which do not obtain in a motion to dismiss. The first motion relates generally to formal matters, while the latter takes the place of the old demurrer and is decided upon questions of law or equity. It would seem better, therefore, to decide the case upon the legal points involved.

4. It is claimed by the plaintiff, however, that even conceding the survival of a cross bill in equity pleading, it is not appropriate to the case at bar, in that it sets up no equity and is based upon conversations precedent to a written contract. Probably the most serious point in regard to the answer and so-called cross bill is that the defense set up is not one contemplated by the mortgage law of Porto Rico, which is the law of real property of Porto Rico. Fernandez v. Perez, 6 Porto Rico Fed. Rep. 665, 675; Hesse N. & Co. v. Ledesna, in this court in 7 Porto Rico Fed. Rep. 520, Feb. 26, 1915. This is under the general principle that the *lex loci* of the land controls its descent, alienation, and transfer, and the instruments effecting such conveyance. The local law enters into the contract as a part of it. Brine v. Hartford F. Ins. Co. 96 U. S. 627, 24 L. ed. 858. Under that law the summary proceedings cannot

El Banco Popular v. Wilcox.

be suspended at the instance of anyone. Martinez v. Rivera, 6 P. R. R. 177; Roca v. Banco Territorial, 6 P. R. R. 339.

The defenses which the mortgage law and its regulations admit are only forgery, prior title, and cancelation. Mortgage Law Regulations, art. 175. It is true that it has been held in the case of Heese, N. & Co. v. Ledesma, supra, that a court of equity will admit other defenses under proper circumstances. It may well be that one of these is fraud vitiating the contract, for fraud is one of the main grounds of equitable intervention. If the deed from Landron to Wilcox did not contain the contract actually agreed upon, a court of equity would in a proper case entertain the proper pleading to reform the contract. This, however, could probably only be done in a proceeding to which Landron and wife were parties, unless in some way it is shown that the plaintiff had in that regard succeeded to the rights and equities of Landron. As it stands the defendant's claim would be untenable. The fact that he did not understand Spanish would be no defense available to him in regard to a Spanish deed which he accepted. Conversations before a written contract are held to be merged in it. As long as the contract is left standing it must be enforced. The only way to obviate it is, in some proper way, to have its terms reformed or set aside. The so-called cross bill seeks to avoid it on the ground of parol conversations beforehand, but these cannot be taken into account. 27 Cyc. 1136.

5. The cross bill also sets up that "said deed and mortgage" is null and void, because the notary was president and a stockholder of the plaintiff, that one or more of the witnesses were in the employ of said notary, and that, therefore, under the provisions of § 20 of the Notarial Law of Porto Rico the con-

veyance in question is void. The provision is found as § 1993 of the Official Compilation of the Laws of Porto Rico of 1911, and reads as follows:

(1998) Sec. 20. The following public instruments shall be null and void:

· First. Those in which the notary authorizing same has intervened as a party thereto, or which contain any provision in his favor.

Second. Where the relatives of the parties concerned therein, or the relatives, clerks, or servants of the notary authorizing the instrument, are witnesses thereto. ·

Third. Those in which the notary fails to certify as to his knowledge of the parties, or to supply this deficiency with witnesses of identification, or where the signature of the parties and witnesses, and the signature, mark, and rubric of the notary, when requested, do not appear.

The validity of this defense is not at present before the court, and so need not be passed upon. It is to be noted only that, if it be a valid defense, it arises out of the transaction sued on by the plaintiff, and is therefore within the scope of equity rule 30 as to set-off and counterclaim. In other words, it is, if valid, defensive matter and can be set up in an answer, and does not need a cross bill. If it is a good defense, it annuls the conveyance in question. It is true that to give it full effect would require more than the dismissal of the bill of complaint, in that it should be carried into effect by a decree of cancelation. It is quite possible that under the earlier practice a cross bill would be necessary to uphold such a decree, but the provisions of new equity rule 30 admitting set-off and counterclaim as part of the answer must be held to justify appropriate relief in the decree

El Banco Popular v. Wilcox.

also. It may be that, if the point be a valid one, it would have been set up by an independent suit in equity. Nevertheless, it was not set up as an independent suit in equity, and as it grows out of the transaction sued on it comes within the scope of the new rule. The defendant would gain nothing even if the cross bill were allowed, for a claim when urged in the shape of a cross bill, even under the old practice, was merely an auxiliary suit and a dependency of the original bill, which, when the bill is dismissed, would share the same fate. Cross v. De Valle, 1 Wall. 5, 14, 17 L. ed. 515, 518.

It follows, therefore, that the defendant's motion to dismiss the bill of complaint is denied, and that plaintiff's motions to dismiss the answer and to dismiss the cross bill will be granted unless these are so amended within ten days as to meet the views above expressed.

It is so ordered.