BEISEKER et al. v. MOORE.†

(Circuit Court of Appeals, Eighth Circuit. November 13, 1909.)

No. 2,862.

1. APPEAL AND ERROR (§ 1097*)—REVIEW—SUBSEQUENT APPEALS—FORMER DECISION AS LAW OF CASE.

Where a case has been once taken to the Circuit Court of Appeals on a writ of error and determined, and remanded for a new trial, the decision of such court on all questions of law becomes the law of the case, and a second writ of error brings up for review nothing but the proceedings had on the second trial, requiring a consideration of new evidence or a different state of facts.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4358–4368; Dec. Dig. § 1097.*]

2. APPEAL AND ERROR (§ 274*)—REVIEW—INSTRUCTIONS.

An exception to an instruction based on a specific ground does not present for review by an appellate court the question whether the instruction was erroneous for a different specific and separate reason.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1631–1645; Dec. Dig. § 274.*]

3. TENDER (§ 29*)—QUESTION FOR JURY.

In an action for breach of a contract for purchase of land by plaintiff from defendants, where plaintiff made a tender of performance which was not accepted, but defendants refused to say that it was rejected, and the evidence was conflicting as to whether they afterward offered to accept it, the question whether plaintiff kept the tender good for a reasonable time was one for the jury.

[Ed. Note.—For other cases, see Tender, Dec. Dig. § 29.*]

4. TENDER (§ 14*)—SUFFICIENCY—CONDITIONS.

Under an executory contract for the purchase of land by plaintiff from defendants, an offer by plaintiff to perform by tendering the cash and notes called for by the contract in payment for the land, coupled with a demand for a conveyance and a statement that, unless the deeds were then delivered, plaintiff would consider the tender refused, was not such a conditional tender as to be ineffective.

[Ed. Note.—For other cases, see Tender, Cent. Dig. §§ 33–38; Dec. Dig. § 14.*]

Sanborn, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the District of North Dakota.

Action by Charles E. Moore against Thomas L. Beiseker and Charles H. Davidson, Jr. Judgment for plaintiff, and defendants bring error. Affirmed.

This was an action at law brought by Moore, defendant in error, against Beiseker and Davidson, to recover damages for a breach of a contract to convey land, situated in McLean county, N. D. The complaint set forth, in hæc verba, the contract sued on, together with the facts and correspondence in great detail relied upon by the plaintiff in support of his cause of action. A demurrer was interposed to it by the defendants and sustained by the Circuit Court, and, from the judgment rendered in favor of the defendants thereon, the plaintiff took his writ of error. After a patient examination of the com-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

† Rehearing denied December 23, 1909.

plex facts presented and legal principles invoked, we reversed the judgment and directed a new trial of the action. Moore v. Beiseker, 147 Fed. 367, 77 C. C. A. 545. Subsequently an answer was filed, the case went to trial before a jury, and a judgment resulted in favor of the plaintiff for $6,754.50. To reverse this judgment, the present writ of error is prosecuted.

Guy C. H. Corliss (Robert G. Morrison, on the brief), for plaintiffs in error.

A. R. Molyneux and E. C. Herrick (Maher & Herrick, on the brief), for defendant in error.

Before SANBORN and ADAMS, Circuit Judges, and RINER, District Judge.

ADAMS, Circuit Judge (after stating the facts as above). It was settled by the judgment in the former case as elucidated by the opinion rendered that, by reason of the peculiar facts and circumstances surrounding the parties at the time the contract was made and the action of the parties then and subsequently taken in the way of performance, the limit of 30 days fixed for such performance by the contract was waived.

According to its provisions, which are set forth at length in the former opinion, the defendants were first required to deliver to the purchaser complete abstracts of title to the lands, and the purchaser, after taking 10 days to examine the same, was required to take the next step towards performance by tendering the cash payment which was to be one-third and notes secured by mortgage on the land conveyed for the balance or two-thirds of the purchase price. Acting on the construction of the contract which they had adopted, abstracts were from time to time furnished by the vendors, dissatisfaction of one kind or another was found with them, and corrections were made until the latter part of August, 1902, when satisfactory abstracts of title to 8,829.08 acres were furnished to the purchaser. The parties then agreed to close the deal so far as these lands were concerned, and proceeded to do so. While arranging to consummate their conveyance, a controversy arose with respect to the time when interest should begin to run on the notes to be given for the deferred portion of the purchase price. The vendors claimed that it should run from December 21, 1901, because the contract provided that the notes should each be dated December 21, 1901, and all should draw interest at the rate of six per cent. per annum until paid. The vendee contended that, in view of the waiver of the time limit and the delays in furnishing satisfactory abstracts of title, interest should run only from the time of actual performance, and that the earliest possible date, fixed by the standard he suggested, was September 1, 1902.

Whether it was the fault of the plaintiff or not which occasioned the delay in furnishing the abstracts and whether the defects in them complained of by plaintiff from time to time were defects in ownership, title or otherwise, within the exact purview of the stipulation of the contract in that regard, or whether the contract was indivisible so as to require a purchase of all the lands described in them,

if any (questions learnedly argued by defendant's counsel), are quite immaterial in view of the fact that the parties did away with all these questions when they proceeded to the execution of their contract as practically construed by them. As said in the former opinion, they then treated it as."a recognized, subsisting contract obligatory upon both, whereby the one-third of the purchase money for the acres thus accepted was to be paid and deeds and mortgages exchanged." Abstracts of title were furnished, and they treated them as delivered to the plaintiff in execution of the contract obligation in that respect, and proceeded to close the deal so far as those lands were concerned. Many of the contentions of defendants' learned counsel are in manifest disregard of the contemporaneous construction which the parties placed upon the contract, and fall well within the general denunciation of such things expressed by Judge Philips in the opinion in the former case. As the parties brushed many of the questions now minutely argued by defendants' learned counsel away, so will we; and, as many of those now argued were settled by the former judgment and have become the settled law of the case, we will come directly to the new things involved in this writ of error about which there was a real controversy.

There do not seem to have been any very serious differences between the parties until September, 1902. The defendants had then furnished, as already stated, satisfactory abstracts of title for 8,829 acres of land, and the parties had agreed to proceed immediately to the execution of their contract so far as those lands were concerned. leaving the balance in abeyance to be dealt with as fast as abstracts of title could be perfected. Between August 29th and September 18th some correspondence and personal interviews were had by the parties concerning the time when interest should begin to run on the deferred payments; but they failed to agree. The plaintiff finally determined that the notes evidencing the deferred payments should bear interest only from the time defendants were ready to, and did, convey the lands to him, and proceeded to act accordingly. He was required to take the next step in the way of performance of the contract in order to put the defendants in default (Michigan Home Colony Co. v. Tabor, 141 Fed. 332, 72 C. C. A. 480), and on September 18th made a tender of the cash payment due on the lands and also of notes bearing interest from September 1, 1902, secured by mortgage to evidence the deferred payments, and demanded a conveyance of legal title by the defendants which was refused. If plaintiff was right in his general contention about interest, the date of September 1st fixed by him from which interest should run is probably as liberal to the defendants as the facts in the case warrant.

It is conceded by the defendants that upon the theory that plaintiff was bound to pay interest only from the 1st of September, 1902, and on the theory that the number of acres tendered for, to wit, 8,829, was correct, a sufficient amount of cash and sufficient notes for the deferred payments were tendered by him.

Four objections, however, are made to the tender: First, that the notes should have borne interest from December 21, 1901, instead

of September 1, 1902; second, that the tender was insufficient, in that it did not embrace cash or notes for about 136 acres of land which were found on that date not to have been included within the aggregate of 8,829 acres, reported by defendants to be ready for conveyance; third, that plaintiff nullified the tender of performance after it was made by failing to keep it good a reasonable length of time for the defendants to accept; and, fourth that the tender was a conditional one, conditioned upon the surrender to the plaintiff of defendants' claim to interest upon the deferred payments.

We will take up these objections in the order stated; but, before doing so, we should remember that this is not a case of tender to extinguish a debt or stop interest, but is rather an offer of performance by one party to a contract containing mutual and dependent covenants, requisite to put the other party in default.

Were the defendants entitled to the interest demanded? This very question framed in the same words precedes its careful discussion in the former opinion. It was then answered in the negative, and that would seem to be conclusive of the present inquiry. But learned counsel for defendants say it was not conclusive, because, using his own language, "the decision proceeded upon the theory of default of the defendants and not upon any consideration of the contract itself."

We do not construe the opinion as adjudicating merely that by reason of defendants' wrongful default in the matter of furnishing abstracts of title interest could not be exacted. That is quite too narrow and constricted a view of the opinion taken as a whole. Whatever was said in the discussion of the subject of interest was said after we had determined the true meaning of the contract not only in the light of its own terms, but in the light of the contemporaneous construction put upon it by the parties themselves. It was in view of the contract so construed by the parties, and not as a penalty for a default, that we held that no interest accrued to the defendants until actual performance by them in the way of transferring the title.

It is also suggested that the proof taken at the trial below disclosed a state of facts different from that disclosed in the complaint which was alone before the court in the former case and that this fact impairs or destroys the force and effect of that judgment as the law of the case. We find nothing, however, to justify such contention. A careful comparison of the proof found in this record with the showing made by the complaint and exhibits in the former case convinces us that no new fact of any substance or materiality is now presented for our consideration.

The rule is firmly settled that, after a case has been once brought here and decided and remanded for a new trial, a second writ of error brings up for review nothing but the proceedings had on the second trial. All questions of law determined on the first writ of error become the law of the case both for the trial court and for this court on the second writ of error. Roberts v. Cooper, 20 How. 467, 481, 15 L. Ed. 969; Panama Railroad v. Napier Shipping Co., 166 U. S. 280, 284, 17 Sup. Ct. 572;[1] Illinois v. Illinois Cent. R. Co., 184 U. S. 77, 22 Sup.

[1] 41 L. Ed. 1004.

Ct. 300, 46 L. Ed. 440; Guaranty Co. of North America v. Phenix Ins. Co., 124 Fed. 170, 174, 59 C. C. A. 376; Montana Min. Co. v. St. Louis Min. & Mill. Co., 147 Fed. 897, 78 C. C. A. 33. This rule, it is true, prevails only when the second record presents substantially the same facts as the first. Inasmuch as the purpose of remanding a cause for a new trial is to enable parties to produce further competent testimony, it is manifest that, when new and material evidence is presented on the second trial, the law applicable to the new state of facts must be decided. 1 Herman on Estoppel and Res Judicata, § 115; Elston v. Kennicott, 52 Ill. 272; Crotty v. Chicago G. W. Ry. Co. (C. C. A.) 169 Fed. 593.

But this rule cannot be employed as a pretext to secure a re-examination of the questions actually settled before. As said by Mr. Justice Grier, in Roberts v. Cooper, supra:

"To allow a second writ of error or appeal to a court of last resort on the same questions which were open to dispute on the first would lead to endless litigation. * * * There would be no end to a suit if every obstinate litigant could, by repeated appeals, compel a court to listen to criticisms on their opinions or speculate on chances from changes in its members."

Our conclusion is that we are foreclosed by the law of the case from opening anew the question when interest began to run on the deferred payments. We held on the first writ of error that a tender by plaintiff of notes bearing interest from September 1, 1902, was all that was required of the vendee; and to that we now adhere.

Did the tender or offer to perform by plaintiff fail to put defendants in default because it did not include cash and notes for 136 acres of land? It is conceded that plaintiff was in no way at fault in this matter. Through error of defendants' agents employed to prepare the abstracts the number of acres in a certain section was incorrectly stated. It having been the duty of defendants to first present abstracts to plaintiff showing title to lands which they could convey, he had a right to act upon the showing made by the abstracts as furnished. He did so, and made his tender of performance for the full number of acres shown by the abstracts presented to him. No objection was made to the tender on the ground of discrepancy in acreage. In fact, no such discrepancy was known to either party until after the tender of performance by plaintiff. A suggestion of it was made by a third person later in the day, and learned counsel for defendants admit that, as plaintiff acted in good faith and was misled by the mistake of the abstractor, defendants could take no advantage of that mistake; but they insist that the duty rested on plaintiff as soon as a discrepancy was suggested to make a reasonable effort to ascertain the amount of it and to renew his tender of performance later. The only way this question is brought to our attention as a matter of law is by an exception to a refusal of the court to instruct a verdict in favor of the defendants, based in part on the alleged ground that plaintiff failed to offer performance as to those 136 acres. The evidence that the tender was for a less number of acres than it ought to have been, and that the same was known, or could have been known, to the plaintiff before he proceeded to put defendants in default, was vague and uncertain, and not

sufficiently specific or clear to justify the court to pass on its effect as a question of law. It presented a question of fact to be determined by the jury under proper instructions. The court therefore committed no error in not peremptorily instructing a verdict as requested. It is again contended that the court erred in charging the jury as follows:

"To summarize the case, gentlemen, I charge you as a matter of law that Mr. Moore tendered to the defendants on the 18th of September all that they were entitled to receive under the contract, and that if his tender was made in good faith and he continued for a reasonable time ready and able and willing to deliver to the defendants that which he tendered, and the defendants failed to come forward with an offer to accept the same, and to perform the contract on their part, then the defendants have violated their contract, and the plaintiff is entitled to recover."

Counsel for the defendants interposed the following exception:

"We except to that portion of the charge that charged the jury that the tender was sufficient, and in that connection insist that the question should be submitted to the jury as far as the interest is concerned as a question of fact as to whether the defendants exercised reasonable diligence in getting out abstracts and perfecting titles."

This charge and exception had manifest reference to the disputed question of interest, which had always been the chief bone of contention between the parties, and, if they had any reference to the deficiency of acreage, they were so obscure as not to afford the basis for review. They at best for the defendants contained two subjects—one interest and the other discrepancy of acreage. "When an exception is reserved to a charge which contains two or more disputed or separable propositions, it is the duty of counsel to direct the attention of the court to the precise point of objection." "The rule is that the matter of exception shall be so brought to the attention of the court before the retirement of the jury to make their verdict as to enable the judge to correct any error if there be any in his instructions to them." Mobile & Montgomery R. R. Co. v. Jurey, 111 U. S. 584, 4 Sup. Ct. 566, 28 L. Ed. 527. The rigid enforcement of this rule, not only conduces to the orderly administration of justice, but is a consideration specially due to trial judges who have no other opportunity for correcting an inadvertent remark or erroneous statement of law, without granting a new trial and incurring the delays and expenses incident thereto.

The exception under discussion did not comply with this rule. The court's attention was not called to the effect of any discrepancy in acreage in any such clear and distinct way as to enable it to correct its charge in that particular, if it had seen fit to do so.

Did the plaintiff nullify his tender of performance after it was made by failing to keep it good a reasonable length of time for defendants to accept? The answer to this question depends upon the proof. One important matter of difference and only one had up to that time arisen between the parties, and that related to the time interest should begin to run on the note. The parties apparently had become irreconcilable on this question. Defendants had expressed themselves ready and willing to perform if interest should be allowed from December 21, 1901, and not otherwise; and the plaintiff had offered to perform if interest

should run only from September 1, 1902, and not otherwise. This contention had been fought to a finish. Neither was willing to yield an inch, and the plaintiff was about to take the requisite legal steps to put defendants in default. It is therefore, in view of this crucial and well-understood difference, that we must approach a consideration of the present question. The evidence is in narrow compass. Plaintiff testified that he said to Beiseker, when he offered the money and notes, "I demand my deed. This money is yours. Here are the notes and mortgage. I have complied with my contract, and I demand my deed for these lands"; that Beiseker did not reply, and that he said, "You refuse do you to give me my deed"; that Beiseker said, "I do not refuse to do anything"; that he, Moore, then said, "You don't give me my deed and by your not giving me the deed when I tender you what is yours you do refuse to give the deed"; that Beiseker said nothing more, but walked away; that Moore then gathered up the money and the notes and left the room; that, after he had reached the door of the room where the tender was made, he again called Beiseker and again tendered him the money and demanded his deed; that Beiseker said nothing, but walked away and left him. The foregoing is the substance of Moore's testimony on the subject. Beiseker did not contradict this testimony in any material respect, but testified that towards the evening of that day, after he and Moore had been in conference for two or three hours discussing the subject, he told Moore he was willing to waive his legal rights as he understood them, and to accept the tender made in the morning and asked Moore to stay over another day and close the deal. This is flatly denied by Moore, who testified that Beiseker made no such proposition, but only asked him the question whether he would close on the terms of the tender, if he, Beiseker, would telephone to one Ross who represented Davidson, his co-owner, and see if Ross would guarantee that his client Davidson would consent to the closing on the terms of the tender.

This testimony, taken with all the other evidence on the subject which we have carefully considered, is not so conclusive as to justify us in declaring as a matter of law that the offer to perform was not rejected by the defendants or was not held open long enough by plaintiff to enable them to determine their course in view of it. The evidence was contradictory in itself and susceptible of diverse inferences, which well justified its submission to the jury under proper instructions. This was done, the court saying, in substance, that the plaintiff could not make a captious tender to the defendants for the mere purpose of casting them in a suit for damages; that he was bound to keep his offer good for a reasonable length of time in order that the defendants might make whatever examinations and calculations were necessary to determine its sufficiency, and enable them to offer to perform the contract on their part; that, if the defendants by what they said or did signified to plaintiff as a reasonable man that they rejected the tender, that would constitute a breach of contract on their part. The court then told the jury in view of what took place in the afternoon that if Beiseker then offered to waive his legal rights and accept the tender and to telephone to Ross and have him come up and close the deal,

and, if plaintiff declined to accept that offer, such fact, if it be a fact, destroyed and nullified his former offer of performance. The court summarized this charge as follows:

"To summarize the case, gentlemen, I charge you as a matter of law that Mr. Moore tendered to the defendants on the 18th day of September all that they were entitled to receive under the contract, and if his tender was made in good faith, and he continued for a reasonable time ready, able, and willing to deliver to the defendants that which he tendered, and the defendants failed to come forward with an offer to accept the same, and to perform the contract on their part, then the defendants have violated their contract and the plaintiff is entitled to recover. On the other hand, if the plaintiff's tender was not made in good faith, or if the plaintiff withdrew from the tender or failed to stand ready, able, and willing for a reasonable time to deliver the things tendered to the defendants upon their delivering to him a deed, then this tender was insufficient and he is not entitled to recover."

This was a fair presentation of the issue to the jury, so fair even that there was no exception taken to it by either party and it became the law of the case. The finding of the jury in favor of the plaintiff in the light of this charge conclusively answered the question we are now discussing, in the negative, that the plaintiff did not nullify his tender of performance, by failure to keep it good a reasonable length of time for defendants to accept.

Was the tender of performance by the plaintiff so conditioned as to render it ineffectual to put defendants in default? It must be and is conceded that, as this was an executory contract containing mutual and dependent covenants to be simultaneously performed, the plaintiff had a right to demand a conveyance of the land as a condition on which alone he would pay the cash and deliver the notes. Michigan Home Colony Co. v. Tabor, 141 Fed. 332, 336, 72 C. C. A. 480, and cases cited. And we think this was in effect all that was done by him.

The tender of performance after specifying the cash, notes, and mortgages, which were offered, proceeds as follows:

"That said cash, notes, and mortgage are hereby tendered to you in payment of the amount due for the said lands * * * under the said contract and in accordance with the terms thereof, and I hereby demand of you the delivery to me of a deed of conveyance of all said lands * * * as provided for in said contract. You are further hereby notified that unless you now deliver to me said deeds for said lands and carry out said contract therefor, as herein required, I shall consider said tender as refused by you and shall proceed accordingly. The said cash, notes, and mortgage being tendered to you herewith subject to said conditions."

It is contended that the tender was accompanied by a fatal condition that the defendants should yield or abandon their right to later litigate the disputed question of interest. Even if such was the true import of the tender, why was it bad? It was not, as already observed, a tender of money to extinguish a debt or stop the running of interest where the strict rule of unconditionality applies; but it was an offer of performance by one party, when both were bound to perform mutual covenant obligations simultaneously. In such cases either party may tender performance on condition that the other will perform his covenant obligation and do that which he is legally obligated to do. Such a condition does not vitiate the tender. Kennedy v. Moore, 91 Iowa, 39, 43, 58 N. W. 1066; Johnson v. Cranage, 45 Mich. 14, 7

N. W. 188; Frenser v. Dufrene, 58 Neb. 432, 78 N. W. 719; Cass v. Higenbotam, 100 N. Y. 248, 3 N. E. 189, and cases cited. Therefore, if the tender was made conditional upon defendants surrendering their claim of interest, the condition was one which the plaintiff had a right to make. It called upon the defendants to do their reciprocal duty, and perform the legal obligation resting upon them under a true interpretation of the contract.

We conclude that plaintiff's offer of performance was sufficient to put the defendants in default notwithstanding any or all of the objections made to it. Other questions are argued by defendants' learned counsel to which we have given careful consideration, but their solution cannot affect the proper determination of this case, and we therefore refrain from discussing them.

The learned trial judge followed closely in the track laid down in our former opinion, and, treating that as the law of the case, we find no reversible error.

The judgment is therefore affirmed.

SANBORN, Circuit Judge (dissenting). I am unable to agree to the result in this case, but, as I concur in the statements of the law in the opinion of the majority and my dissent results from a different view of the pleadings and the evidence, it will be unprofitable to enter upon any discussion of the case or to do more than to state the conclusions, which the record has forced upon my mind.

1. The contract provided for the sale of 14,250 acres of land for $76,180, one-third cash and two-thirds in notes and mortgages, which should be dated and should draw interest from December 21, 1900, and that the vendors might substitute other lands in lieu of any of those described in the contract to which the title failed. The vendee, Moore, claimed and alleged in his complaint that in August, 1901, the parties agreed that the contract should be so changed that it should stipulate (1) that 8,029.08 acres of the land should be conveyed forthwith, that the vendors should perfect title to and convey the remainder of the lands described in the contract subsequently; and (2) that the notes and mortgages for the 8,029.08 acres should be dated and should draw interest from September, 1901, instead of from December 21, 1900. And he also alleged that the vendee tendered payment for the 8,029.08 acres according to these alleged modified terms of the contract. The former opinion of this court was rendered on a demurrer to this complaint which admitted these modifications of the agreement and this court held that the pleading stated a good cause of action. But since that decision and opinion an answer has been interposed which denied that the original contract was ever so modified that the parties agreed that any of the notes and mortgages should be dated or should draw interest from any date subsequent to December 21, 1900, or that the vendor should perfect title to the remainder of the lands described in the complaint instead of substituting others when titles failed, or that a divided execution of the contract should be made on these modified terms. Writings were introduced in evidence which in my judgment conclusively proved, when taken in connection with

all the other evidence in the case, that the vendors never agreed to any such modifications. And because when this case was formerly before this court there seems to me to have been an admission that the modifications of the contract claimed were made, while now that averment is denied, and all the evidence to my mind conclusively establishes that those modifications were not made, the former opinion is not in my view the law of the case as it now stands.

2. Because the record has forced my mind to the conclusion that it contains no substantial evidence that the agreement that the notes and mortgages should be dated and should draw interest from December 21, 1900, has ever been changed, because no tender of such notes or mortgages was ever made, because the evidence seems to me to establish conclusively that in addition to the 8,029.08 and the 136 acres mentioned in the opinion of the majority, there were 640 acres to which the vendors had shown abstracts of title, because the tender was suddenly made to one of the vendors in the city of Minneapolis while the other was out of that city, its acceptance involved the release of substantial and beneficial terms of the contract and the vendee refused to keep the tender good for a time sufficient to enable the vendor in Minneapolis to confer with his co-owner and get his consent to such a release, the tender was in my opinion captious, inadequate, and futile.

These are the reasons why I have been unable to bring my mind to a concurrence in the result in this suit.