## THOMAS McKENZIE v. P. S. HILLEBOE.

(149 N. W. 342.)

**Verdict and judgment — not sustained by substantial evidence — motion for judgment notwithstanding verdict — new trial.**

From a judgment ordered against defendant on verdict, this appeal is taken, appellant contending that verdict and judgment to be without any substantial support in the evidence, and that his motion for dismissal made at the close of the case and thereafter his motion for judgment notwithstanding the verdict should have been granted. The evidence is reviewed, and it is held that the

verdict and judgment rendered thereon are not sustained by any substantial evidence and should be set aside, but the motion for judgment notwithstanding the verdict is denied and a new trial granted.

Opinion filed November 11, 1914.

From a judgment of the District Court of Bottineau County, *Burr, J.*

Defendant appeals.

Reversed and new trial granted.

*Cowan & Adamson* and *H. S. Blood,* of Devils Lake,. attorneys for defendant and appellant.

*Bowen & Adams,* of Bottineau, attorneys for plaintiff and respondent.

Goss, J. The question involved is one of fact. The important assignments of error are upon the denial of. defendant's motion for a direct verdict of dismissal at the close of all the testimony and the subsequent denial of defendant's motion for judgment of dismissal notwithstanding the verdict.

All the testimnoy must be considered, and any ambiguity or doubtful construction thereof resolved in support of the verdict.

It is established, that in 1909 title to certain land was in the First National Bank of Westhope as security of an amount owing that bank by the Bottineau County Investment Company; that one Hilleboe was throughout 1909 vice president of that bank, and, with the Porters and Cooper, constituted the investment company. In the fall of 1909 Hilleboe disposed of his bank stock. Until that time as vice president he had been one of its active and managing officials. In December, 1909, Cooper became cashier. Plaintiff McKenzie was a farmer in the vicinity of the particular land, and had rented it the previous year, 1908, while title thereof had been in the investment company. In the fall of 1908 McKenzie had done some plowing on this land, and which portion he cropped in the year 1909 under the 1908 arrangement previously made with Hilleboe in behalf of the investment company. In the summer of 1909 some talk was had between Hilleboe and McKenzie to the effect that 100 acres more needed summer fallowing, and pursuant thereto McKenzie summer fallowed the 100 acres under the understanding that, should the land be sold, the bank having the dealing

of it, McKenzie would be paid for his labor at the rate of $1.50 per acre, and in case it was not sold he should crop it on shares in 1910; on the strength of that deal the bank then loaned him $200, with the understanding that in case of a sale of the land $150 would be applied upon his note evidencing such loan, Hilleboe negotiating the loan to McKenzie in behalf of the bank. These facts are undisputed. The question is whether there is any proof that Hilleboe acted individually in this plowing and leasing contract, instead of in behalf of the bank. All the testimony on this question will now be recited. The plaintiff testified that he contracted in the summer of 1909 with Hilleboe in regard to plowing this land "for the defendant," he "to get paid for it when the farm was sold;" and he "was to have the crop off the land if the land was not sold. The farm was sold; $150 and interest is due." That Hilleboe did not tell him the title to this land was in the bank, but that Cooper, the cashier, in 1910 relative to the payment for the plowing, told him in the bank that as soon as settlement was made for the land by the purchaser with the bank the bank would pay for the plowing, and that Hilleboe said the bank would pay when the land was settled for; that McKenzie admits he testified in justice court that for this plowing he "expected to get credit on his note to the bank." That Hilleboe told him "to go to the bank and get credit on your note," but that on his going there Cooper said "that he did not know anything about it." In response to his own counsel, McKenzie testified: "Q. At the time that you made the contract with Hilleboe for the plowing above described, did he (Hilleboe) tell you who was the owner of the land? A. The bank had the dealing of it. Q. Did Hilleboe say in what capacity the bank had the land? A. He didn't say." Porter's testimony offered by plaintiff was that "McKenzie come to me and asked me if I had the renting of the place at one time, and I told him he better see Hilleboe in regard to it, and I understood afterwards he had rented the place." Concerning this incident of the talk with Porter, McKenzie testifies in cross-examination: "Q. Who did you first enter into negotiations with for the rental of the Craig farm? A. Hilleboe. Q. Did you talk with Porter first regarding the renting of this farm? A. No." Hilleboe in cross-examination under the statute testified that he entered into a contract with McKenzie on behalf of the bank for the plowing; that he "told

him that the bank had title, that the farm was for sale and probably would be sold, and he says, then, 'If I do the plowing, how will I be protected for the plowing?' and I told him if he did the plowing, it would be worth that much to whoever got it, but the bank had it that year, and 'I would see that the plowing was paid for.' McKenzie needed some money to carry him along, so he got some from the bank for which he gave his note. Sometime after that that land was sold and the money applied on the contract. That was all there was to that contract." "Later the farm was sold and I told McKenzie about when he came in, and he said that was all right, whenever the plowing was fixed up give me credit on my notes." "At the time that McKenzie rented this land of the investment company, in 1908, McKenzie came into the bank and wanted to rent this farm, and I told him to go and see Charley Porter, who looked after the land at that time and the handling of it, and McKenzie went and saw Porter; he come back to the bank and said that 'Cooper or Porter would not rent it to him,' or something to that effect. 'You better see the bank or see me,' Hilleboe." "Later McKenzie come in again and asked about that land, and I told him he better see Porter about it, and he was out for a while, and said he 'didn't make a deal, didn't arrange to work the land,' and I said that 'we want the land farmed, and it seems to me you better go ahead and plow it. You would be entitled to half the crop anyway.' That was in the fall of 1908. He wanted to do some breaking in the fall, so McKenzie asked if 'he couldn't get a contract on it,' and I says, 'I can't very well do that, because Porter had been looking after those things as secretary, and generally signed the contracts.' I said, 'I can't do that now, but later we may get together and fix up a contract,' but the contract was not fixed up. In renting the land in 1908 I acted in behalf of the Bottineau County Investment Company. I was still a member of that company in 1909. Meanwhile the land was deeded over to the First National Bank. At the second time McKenzie came in I told him that the bank now had a deed to the land. Q. At the time you made the contract with McKenzie in the summer of 1909 did you tell McKenzie for whom you were acting? A. I told him that the bank owned the land and the bank was making the deal with him." On this record at the close of plaintiff's case the defendant moved for a directed verdict on the ground that "there is no evidence in this case

to show that any agreement was made between the plaintiff and the defendant Hilleboe for the doing of this plowing, or any promise made on the part of the defendant to pay the plaintiff for the same;" and that the testimony of the plaintiff himself "affirmatively shows that at the time that this arrangement was made Hilleboe told the plaintiff that he was acting on behalf of the bank, and that at the time he did the plowing he expected he should receive pay for the plowing by having the same credited upon the indebtedness that he then owed to the bank," which motion was denied and an exception taken, upon which ruling error is assigned. On defendant's main case Hilleboe testifies: "He borrowed money from the bank on the strength of this plowing at the same time," and at the time he borrowed this money "he said he wanted to get the money on the plowing, and said when the land was sold to offset it, and I told him we couldn't do that, that the bank couldn't let money out without having something to show for it, but I says, *'you can get the money, and we will take your note and hold the note until the land is sold.'* He gave his note to the bank at that time, and the bank then loaned him $200 in money. At the time this land was sold the bank received $150 "for this plowing, *in addition to the purchase price of the land.*" "Q. And do you know who paid *that amount to the bank?* A. I do. Q. Who? A. Charley Porter. Q. At the time that this sale was made, was McKenzie still owing on this note for the borrowed money he gave at the time the deal was made? A. He was. Q. Was he owing on that note to the amount of $150? A. More than $150." At the time of this sale Hilleboe had sold his interest in the bank, but was still there. He told his successor as vice president about the different deals, including the one with McKenzie, and the sale of the farm, and left instructions to have the bank's contract with McKenzie carried out and the amount he was entitled to for the plowing endorsed on McKenzie's note. That he had testified in justice court that he had acted "for all parties interested in the land during the time that each party owned the land." There never was any time that there was any misunderstanding between McKenzie and me in regard to who had the land, never any question about that. In fact the first I knew of it was when I was sued, that there was some misunderstanding about that part of it. I never individually had any interest in this land, and never received any benefit

personally from any transaction made with reference to it. At the time that I went out of the bank, McKenzie was owing this note, and at that time was entitled to a credit on this note to the amount of that plowing." In rebuttal, plaintiff offers the testimony of MacDougall, a justice of the peace, to the effect that in the trial of this case against the bank, when it was a party defendant, Hilleboe "said he didn't know who he was acting for, whether it was for the bank or the Bottineau County Investment Company. Q. At that time do you remember whether or not he testified to the fact that he told McKenzie he was acting for the bank? A. I do not remember. I remember him saying positively he didn't know which party he was acting for that day. Q. Did you hear Hilleboe then testify that he did not inform the plaintiff McKenzie that he was acting for the bank? A. I couldn't say. I do not remember that." On cross-examination, MacDougall testified: "Q. And didn't Hilleboe say he couldn't tell (whether he was acting for the bank or the investment company) until the date was fixed? A. I couldn't say. Q. Will you testify he did not say that? A. I will not." MacDougall's testimony is of little importance. Taken as true, as it must be, it does not impeach nor contradict Hilleboe, who says he had acted at first for the investment company and later for the bank as to this land. Cooper was also called by plaintiff in rebuttal, and admitted that in the fall of 1909 he received instructions as cashier in regard to the notes and in regard to the payment for certain plowing done by McKenzie. Whereupon both parties rested, and the motion for directed verdict, made at the close of plaintiff's case, was renewed and denied, and the case submitted to the jury, it returning a verdict for plaintiff. Defendant later moved for judgment of dismissal, notwithstanding the verdict, which was denied, and when judgment was subsequently entered, this appeal was taken.

The charge of the court has not been excepted to, and must constitute the law of this case, and as such governs as to the issues submitted to the jury and involved in ascertaining whether there was any issue of fact for the jury to pass upon. The court's instructions bind the plaintiff and this court on such inquiry. The jury were instructed as follows: "The issue that is before you for you to determine is, *Did McKenzie* at the time he entered into the agreement *know that Hilleboe was not acting in his individual capacity? In that case it*

*would be immaterial for whom Hilleboe was acting,* whether it was
for the First National Bank or the investment company, *so long as
McKenzie knew that he was not acting personally.* If McKenzie knew
—the burden of proof is upon him to show that he did not know—*if
McKenzie knew that Hilleboe was acting for someone else, then he
cannot recover in this action, for the reason he would have then sued
the wrong party.* That is all there is in this case. If McKenzie didn't
know, and has shown to you that he didn't know, Hilleboe was acting
for anyone, he had a right to assume he was acting for himself, and if
that is so he is entitled to recover, *but if he has failed to show you that
he did not know that Hilleboe was acting personally, then he would
not be entitled to recover,* and you haven't anything to do with whether
the bank gave him credit on the note or whether the note is not paid,
because that is not in the case and you would be required to return a
verdict for the defendant."

It will be noticed that the foregoing is a plain instruction that, *if
McKenzie knew that Hilleboe was acting for a principal, no matter
whom, McKenzie cannot recover,* with the burden of proof upon Mc-
Kenzie to show Hilleboe was acting individually or that he supposed
he was so acting. This excludes any right of plaintiff to recover as on
a guaranty that Hilleboe would pay for the plowing if the principal
did not. The testimony then must be weighed with reference to whether
there is any substantial proof (1) that Hilleboe acted individually, or
that, if he acted as agent, (2) McKenzie did not know of it.

It is uncontroverted that McKenzie in the fall of 1908 had contracted
with the investment company through Hilleboe for certain plowing
then to be done, which portion of this farm McKenzie in 1909 had in
crop, and at the very time he had the deal to do the summer fallowing
on the balance of it, and upon the strength of which contract he bor-
rowed from the bank $200, negotiating the loan through Hilleboe as a
bank official. McKenzie admits that he was told by Cooper in the bank,
as well as by Hilleboe outside the bank, that when the land was sold a
settlement was made for it, and the bank, not Hilleboe, would pay for
the plowing. In response to his own counsel, McKenzie testifies that
at the time he made the contract with Hilleboe for the plowing, Hilleboe
told him "the bank had the dealing of it," but he was not informed in
what capacity. The testimony of Porter, his own witness, is "that

McKenzie come to me and asked me if I had the renting of the place at one time, and I told him he better see Hilleboe in regard to it, and I understood afterwards he had rented the place." The time is fixed as the year in question by the immediately succeeding question and answer: "Q. Do you know whether the farm was sold that year or not? A. It was." Concededly the sale was in the fall and before December 1, 1909.

Concede that McKenzie's testimony is true that he did not talk with Porter *first* about *renting* this farm, but entered into negotiations for its rental with Hilleboe: This does not dispute the testimony of either Porter or Hilleboe that Porter, during the negotiations in the fall of 1908, leading to the *renting* of this farm, was referred to Hilleboe when approached in that regard by McKenzie. Again, concede that at the time McKenzie "entered into negotiations" for either rental of or plowing upon this land (concerning which his testimony is indefinite), he "didn't know that the title to the land was in the bank," that does not establish nor is it proof that at or before the contract for the plowing was consummated, and before any plowing was done, McKenzie did not know and understand that title was in the bank. All of the plaintiff's testimony may be true and so may all of Hilleboe's. Plaintiff could answer as he did on his cross-examination, and still speak the truth and testify to nothing concerning the contract as actually entered into. Any lawyer or trial judge has often heard such semi-evasion, or equivocal testimony, whereby the whole answer given is made to depend upon the time stated in the question or other conditions. To the particular inquiry put, "During the summer of 1909 did you have any dealings with the defendant Hilleboe regarding the plowing of said land?" to which he replied, "Yes," the answer may be equally true, as the dealings were had with Hilleboe aside from the question of whether had with him individually or as an agent. The same is true as to the answer "yes" to the question, "Did you agree to plow certain land for the defendant during the summer of 1909?" There is nothing substantial in plaintiff's whole testimony to raise any issue as to the capacity in which or for whom Hilleboe contracted, as plaintiff has not testified upon those particulars. But plaintiff's testimony discloses that he expected the bank to pay for this work, as appears from the following: "Is it not a fact that you expected the amount due you for the plowing

from the bank to be credited on your debt to the bank? A. Yes. Q. And on the trial of this action in the justice court you there testified that you expected to get credit on your notes, did you? A. Yes." From plaintiff's testimony likewise it must be conceded that he had borrowed money from the bank and given his note for it, upon which the bank was to indorse a payment when the land was sold, and, as he testifies flatly, he expected the amount due from the plowing to be then credited on that note. And it must not be overlooked that this plaintiff has testified that "at the time he made the contract for the plowing of the land, Hilleboe told him the bank had the dealing of the land," so that besides corroborating Hilleboe and admitting knowledge of the bank's interest, McKenzie knew when he contracted to plow it in 1909, as he had known when he leased the land through Hilleboe the fall before, then acting as he knew for the investment company, that the bank had the dealing of it; that is, the control of it. He does not deny Hilleboe's testimony that the loan by the bank was made to him on the strength of and at the same time that the contract for the plowing was entered into, and knowledge in him that the bank then had the dealing of it, that the bank was thus loaning its money as indirectly an advance payment for that plowing. McKenzie at the time of the getting of the money asked that he be relieved from giving a note, and instead that the money be given him by the bank as an advance payment for the plowing to be done by him, but that instead his note was taken for the reason that the bank had to have something to evidence the money given him virtually as an advance of unearned money, but with the explicit understanding that the note would be held until fall, and if the farm was sold the plowing was to be credited thereon, and, if not, McKenzie should crop the ground so plowed on halves the succeeding year. All this is not denied by McKenzie, but his silence concedes it to be the fact. McKenzie then must have known that Hilleboe was loaning this money as an advance payment, not for Hilleboe, but for the bank, McKenzie's paymaster. He admits that he knew the bank had the dealing of the land. He knew that Hilleboe was its vice president, and its active official; that Hilleboe had the year before leased it to him as an agent for the investment company, the management of which had been succeeded by the bank after it had secured the dealing of the land, as he was told it had. Besides, the following testimony of Hilleboe is not denied, and Porter and Coop-

er both testified after Hilleboe. Q. "Now, at the time this land was sold, do you know whether or not the bank received pay for this plowing in addition to the purchase price of the land?" A. "They did; they received $150." Q. "And do you know who paid that amount to the bank?" A. "I do." Q. "Who." A. "Charley Porter." None of this testimony is denied by the plaintiff or anyone. Porter does testify that "all the money that came out of the farm was applied upon the indebtedness in the First National Bank of the Bottineau County Investment Company."

The court eliminated from the jury's consideration and from ours all question of the failure of the bank to apply this $150, admittedly received by it from the investment company or Porter, by its instructions to the jury that "you haven't anything to do with whether the bank gave him credit on the note, or whether the note is not paid, because that is not the case." This was on the theory that whatever was done by the bank was immaterial, as the application of the proceeds was no proof of whether Hilleboe contracted in his individual capacity or as agent, and as a matter occurring many months after the contract was entered into and had been fully performed.

The verdict must be supported, if at all, by Hilleboe's statement made on cross-examination and in explanation of McKenzie's inquiry as to whether McKenzie would get his pay if he did the work in case the bank sold the land, it being "for sale and probably would be sold, "whereupon Hilleboe stated to McKenzie that he "would see the plowing was paid for," a statement showing on its face under the facts concerning which it was made, and in response to the inquiry causing it, that respondent knew he was dealing with the bank and wanted Hilleboe to see that the bank paid him, and to that extent evidence against the plaintiff. This statement cannot be taken as an isolated statement; it must be considered with the other facts testified to by Hilleboe, of which it was given as a part. Under the instructions of the court, properly given, it cannot be considered as a guaranty of payment, as that matter is beyond the issues under the pleadings. Besides, if Hilleboe was here sued as guarantor, the proof in this case discloses an absolute defense would be available to him, inasmuch as he did see to it that $150 additional to the price of the land was paid to that bank, as a payment for and by McKenzie, which amount under the undisputed

proof should have been credited on this note, and under the law it is credited thereon, whether indorsed or not. The statement of McKenzie that he "had a dealing with Hilleboe in regard to the plowing," and that he "agreed to plow certain land for the defendant," this land in question, taken in connection with the statement of Hilleboe that he, Hilleboe, "would see that the plowing was paid for," standing separately unexplained might amount to enough testimony to sustain this verdict, if they could be considered alone and without regard to all the other admitted facts, including the testimony of McKenzie's own witness, Porter, and Hilleboe's uncontradicted testimony concerning plaintiff's knowledge of whom he was dealing with, together with the fact that McKenzie admits he was told the bank had the dealing of the land; that he was then growing a crop on part of it under lease made through Hilleboe with the investment company, not Hilleboe; he being at the time a lessee of such third party. The court instructed that the question for the jury was, "Did McKenzie at the time he entered into the agreement know that Hilleboe was not acting in his individual capacity ?" "If McKenzie knew that Hilleboe was acting for someone else, then he cannot recover in this action, for the reason he would have then sued the wrong party." The evidence seems overwhelming, and, considered in connection with all the admitted facts, free from conflict as to this crucial question of fact. McKenzie not only knew the bank had the dealing of the place, that is, the control of it, as he admits, also that Hilleboe was the active officer for the bank; as such through him the bank advanced payment for his note, Hilleboe acting as its active, known, and disclosed agent, and as payment in advance for this very plowing. This fact McKenzie has not seen fit to deny. It is further admitted that the bank has been reimbursed after the sale made. . The only conclusion left is that this lawsuit is the result of the refusal of those bank officials succeeding Hilleboe to respect the bank's contract with McKenzie fully performed and paid for, thereby attempting to shift the burden of payment of the bank deal upon this defendant. There is no substantial testimony raising any issue of fact. At the most it can be regarded as but a scintilla of testimony, and as such is insufficient to support the verdict. The court should have granted the motion for a directed verdict made at the close of the case; but the motion for judgment notwithstanding the verdict is denied, as possibly plaintiff may produce

some evidence on a new trial authorizing his recovery. It is therefore ordered that the motion for judgment notwithstanding the verdict be denied, but that a new trial be awarded. Defendant to recover costs taxable on appeal.

BRUCE, J. I concur in the result.

SPALDING, Ch. J. (dissenting). Under the guise of deciding only a question of fact, it appears to me that the opinion of the majority conflicts most emphatically with several principles of law and procedure established in this jurisdiction by numerous authorities. Hence, I cannot concur in the conclusion reached by my associates. The assignments of error relate to two propositions: First, that the court erred in not directing a verdict for the defendant at the close of the trial; second, that it erred in not granting defendant's motion for judgment notwithstanding the verdict.

The rule regarding granting motions for directed verdict is so well settled in this state as to hardly require citation. It has been passed upon in numerous cases, the language only varying. The most recent case is Oakland v. Nelson, post, 456, 149 N. W. 337. This rule is stated in John Miller Co. v. Klovstad, 14 N. D. 435, 105 N. W. 164, to be as follows: on a motion for directed verdict made at the close of the trial, all fair inferences from the evidence must be drawn in favor of the person against whom such verdict is directed, and it was held that it was error to direct a verdict when honest and intelligent men might fairly differ in their conclusions from the evidence. I can regard the opinion of the majority only as either overlooking or in conflict with this rule. The court has drawn all inferences in favor of the defendant. It has given him the benefit of all doubts regarding the meaning of the evidence, and construed it most strongly in his favor. It has passed upon the whole evidence as though it were an equity case, and in effect held that because the evidence preponderates in favor of the defendant a verdict should have been directed. Practically all the evidence in the case is quoted in the opinion in such order as will best sustain the defense, when under the rule established only the evidence favorable to the plaintiff should be considered in passing upon the motion. The issue was not one of payment, but whether the contract for

the plowing was made with the defendant, and, is so, whether it was disclosed who the principal was. It is elementary that, if not disclosed, the defendant is liable. It is nowhere contended that the Bottineau County Investment Company was to pay for the plowing. It lay between the defendant Hilleboe and the First National Bank of Westhope. The only evidence on the part of the plaintiff, susceptible of any construction indicating that the contract was being made for the bank, was his statement that Hilleboe said the bank had the dealing of it. This is an obscure and ambiguous statement. It might mean one thing or it might mean another. The jury, having all the facts and circumstances before it, construed this language and found in favor of the plaintiff. To have reached the verdict, it necessarily follows that the jury must have found that this did not inform plaintiff that the contract was being made on behalf of the bank. That a police magistrate, twelve jurors, and the trial judge construed it one way, and four members of this court construe it the other, would seem to have some tendency to show that honest and intelligent men not only might, but do, fairly differ in their conclusions from the evidence.

Let us see what the evidence favorable to the plaintiff discloses, when separated from the defense and when the inferences which it will bear are drawn in favor of the plaintiff, in accordance with the rule. Hilleboe, the defendant, was vice president of the bank and an officer of the investment company when the transaction occurred. The plaintiff had been a tenant on the farm the preceding season. It is not disputed that he then knew that he was the tenant of the investment company, but in the meantime title had been conveyed to the bank. The fact that it was only taken as security, in view of the circumstances, is immaterial. The statement that the bank had the dealing of it certainly did not tend to show that the investment company owned it. If, in fact, the plaintiff was not advised as to the ownership, Hilleboe himself was liable. True, Hilleboe testifies that he told him who owned it. This is denied by the plaintiff. The evidence which should be considered on this motion may be summarized as follows:

When plaintiff desired to rent the farm for the year 1910, he was informed that it was for sale and would probably be sold, and it was agreed that, if he would plow the land, he should have the use of it for the next season on terms agreed upon, if it were not sold, while, if sold,

he should be paid $1.50 an acre for the plowing. The land was sold after the plowing was done and before the next season. It is true that plaintiff borrowed $300 from the bank, gave his note therefor, and expected pay for the plowing to be indorsed on his note. This fact is. nothing unusual, nor does it relieve the defendant. Banks often loan money on the strength of contracts, which the borrowers hold with third parties, and rely upon the fulfilment of the contracts to enable the borrower to pay. Making loan and taking note do not constitute payment by the bank in advance for work done.

The plaintiff testified by deposition taken before the trial. While his statements are not as complete as they might be, or as they doubtless would have been had he anticipated statements that were to be made by the defendant on the stand, yet they are to the effect that he was to plow the land and be paid for it when the farm was sold; that the dealings were between him and the defendant; that he first entered into the negotiations with the defendant; that he agreed to plow it for the defendant; that he did not know that the title to the land was in the First National Bank of Westhope. Hilleboe admits that he arranged payment for the plowing, and states that it was carried through as far as he agreed, but claims his arrangement was made on behalf of the bank, and says he told plaintiff that the bank had title to the land, but he admits that he also told him that he would see that the plowing was paid for; and that he acted for the Bottineau County Investment Company when the land was rented to plaintiff the preceding season. Evidence that he knew the year before that it belonged to the investment company cannot prove knowledge that the bank was the principal. When one enters into an oral contract, the presumption is that he is the principal, and he is liable as such unless it is disclosed who the principal is.

C. W. Porter testifies that in 1909 plaintiff saw him about renting the place; that he told him to see Hilleboe; that he afterward understood plaintiff rented it; that the members of the Bottineau County Investment Company at that time were Hilleboe, the defendant, Cooper, the cashier of the bank, George Porter, and himself; that he was secretary. He further testifies that, to the best of his knowledge, all the money that came out of the farm after the first mortgage, was ap-

plied by the bank on the indebtedness of the Bottineau County Investment Company to it.

Hilleboe testified that the bank received pay for the plowing in addition to the purchase price of the land; that the money was paid to C. W. Porter; that he agreed that the plowing should be credited on the note; that no other officer of the bank knew anything about the deal, except what he told his successor when he left the bank in the fall of 1909, when he left verbal instructions to have the contract carried out.

The police magistrate of Westhope was examined as a witness, and testified that on the trial of the case in his court Hilleboe testified that he did not know for whom he was acting in the transactions with the plaintiff,—whether it was for the bank or the Bottineau County Investment Company. If Hilleboe did not know for whom he was acting, how has the presumption been overcome and must this court assume that plaintiff knew more about it than did the defendant? It seems very clear to me that, notwithstanding the fact that the weight of the evidence is in favor of the defendant, and that, if I were a juror and passing upon the whole evidence, I might feel impelled to return a verdict in his favor, yet the jury having found for the plaintiff, and the question being only as to there being competent evidence to support the verdict, under the application of the rule to which I have made reference, the court is clearly unjustified in holding that a verdict should have been directed for defendant. Ambiguous statements are, with great pains and nicety, vigorously construed in defendant's favor, when they should be interpreted in favor of plaintiff. Taking the defendant's own statement in justice court, it is apparent that he failed to disclose that he was acting as agent for another party or who his principal was, and in such case the agent is liable. Reading the evidence of Porter and between the lines of the other evidence, it is apparent that the seat of the controversy lies between the bank, the investment company, and Hilleboe, that the investment company owed the bank, and that, instead of crediting the $150 on plaintiff's note, it applied it on the indebtedness of the investment company, and therefore had nothing left to apply on plaintiff's note. The defendant desires to cast the burden of his difficulties with the bank upon the plaintiff, and the majority seem disposed to aid him in doing so.

Some of the authorities sustaining the rule to which I have referred,

some of which state it still more strongly in favor of the plaintiff, are Beiseker v. Moore, 98 C. C. A. 272, 174 Fed. 368, a case decided by the circuit court of appeals for this circuit; Hall v. Northern P. R. Co. 16 N. D. 60, 111 N. W. 609, 14 Ann. Cas. 960; Higgs v. Minneapolis, St. P. & S. Ste. M. R. Co. 16 N. D. 446, 15 L.R.A.(N.S.) 1162, 114 N. W. 722, 15 Ann. Cas. 97; Acton v. Fargo & M. Street R. Co. 20 N. D. 434, 129 N. W. 225; F. A. Patrick & Co. v. Austin, 20 N. D. 261, 127 N. W. 109; Galvin v. Tibbs, 17 N. D. 600; Casey v. First Bank, 20 N. D. 211, 126 N. W. 1011; Ernster v. Christianson, 24 S. D. 103, 123 N. W. 711; Dickinson v. Hahn, 23 S. D. 65, 119 N. W. 1034.

In Beiseker v. Moore, 98 C. C. A. 272, 174 Fed. 368 it is held that when the evidence is given the strongest construction which it will bear in favor of the party against whom the motion is directed, if it cannot be said to be more than vague and uncertain, a construction in favor of the party against whom it is directed is properly refused. In Ernster v. Christianson, 24 S. D. 103, 123 N. W. 711, it is held that on such motion the court should assume the evidence of the plaintiff to be undisputed, and give it the most favorable construction for the plaintiff that it will properly bear, and give the plaintiff the benefit of all reasonable inferences arising therefrom.

In what seems to me a very strained and unwarranted effort to reverse this case, the majority do a novel thing by taking into consideration the instructions of the court to the jury. No error is assigned on any part of the instructions. They are not in the abstract, and when the motion for a directed verdict was made, of course, the instructions had not been given the jury, and could not be considered by the trial court in passing upon the motion, and are equally outside the record and irrelevant to the merits of the appeal. This is so plain and elementary and simple a proposition that I cannot understand why it is injected into the main opinion to support a reversal. It certainly establishes a new rule of procedure. An attempt is made by Judge Goss to show that the plaintiff's testimony is susceptible of more than one meaning. He then proceeds to interpret it most favorably to appellant, notwithstanding the rule established by authorities cited. Much comfort for the defendant has been found by reference to the statement of the case and by not resting upon the record, as contained in the abstract. There was no disagreement between the parties as to the accuracy of

the abstract, and no request that reference be made to the more complete record contained in the statement, and I protest that under such circumstances it is unwarranted and unjust to the parties to go to the original record in quest for evidence omitted from the abstract, or instructions which have not been brought into it or referred to on argument or in brief, to bolster up a reversal and set aside a verdict of the jury on conflicting evidence. But if this is proper, mention may be made of the fact that it discloses that both the bank and the investment company were made defendants in the case, and judgment had in their favor, leaving the plaintiff no remedy except against the defendant Hilleboe. Not only the jury has found in favor of the plaintiff, but the police magistrate so found, and the trial court denied the motion for a new trial, and its order denying such motion should be sustained. This court can and does only reach its decision by a flagrant invasion of the province of the jury.