EASTERN SEABOARD PILE DRIVING CORPORATION, A CORPORATION OF THE STATE OF DELAWARE AUTHORIZED TO DO BUSINESS IN NEW JERSEY, PLAINTIFF, v. NEW JERSEY PROPERTY-LIABILITY INSURANCE GUARANTY ASSOCIATION, DEFENDANT.

Superior Court of New Jersey
Law Division

Decided January 5, 1979.

*Messrs. Nolan, Lynes, Bell & Moore,* attorneys for plaintiff (*Mr. William F. McEnroe,* appearing).

*Messrs. Stryker, Tams & Dill,* attorneys for defendant (*Mr. Stephen D. Cuyler,* appearing).

YOUNG, J. S. C. Cross-motions for summary judgment again call for an interpretation of the term "covered claim" as that term is used in the New Jersey Property-Liability Insurance Guaranty Association Act, *N. J. S. A.* 17:30A–1 *et seq.* (hereinafter Guaranty Association Act). The issue is stated in this question: Is a corporation of the State of Delaware, authorized to do business in New Jersey and maintaining its principal and executive offices here, deemed to be a "resident," as that term is used in the definition of "claimant or insured" in the Guaranty Association Act?

Plaintiff Eastern Seaboard Pile Driving Corporation (Eastern), is a corporation organized under the laws of the State of Delaware with its principal place of business in Hoboken, New Jersey. Eastern has been authorized to conduct business in New Jersey since July 20, 1972 and, in addition to its principal office, maintains an executive office in Ridgefield Park, New Jersey. Eastern is the owner and operator of a steel dredge, the "Beverly M", which on March 17, 1973 allegedly sustained certain damage within the coverage of a marine insurance policy. The insurance policy had been issued to Eastern by several carriers, including Interstate Insurance Company, which was an underwriter of 10% of the risk covered by the policy.

On or about June 11, 1976 all of the insurance companies, with the exception of Interstate, approved a settlement for all of the claims for damage to the "Beverly M" on a compromised basis for the sum of $379,000. Subsequent to January 1, 1974 Interstate was determined to be insolvent by a court of competent jurisdiction. Plaintiff's claim was incurred prior to or 30 days after the determination of insolvency. Plaintiff filed a claim with the Association for the amount of its claim against Interstate. On or about September 13, 1976 the Association advised plaintiff that its claim was not a "covered claim," as that term is used in

the Guaranty Association Act, *N. J. S. A.* 17:30A–5(d). The rejection is correlative to the contention of the Association that Eastern is not "a resident of this State" within the intendment of the Guaranty Association Act.

Although affidavits and memoranda submitted on behalf of both parties focus, in part, upon the question of whether the steel dredge "Beverly M" was "permanently located in this State," counsel stipulated that the cross-motions are confined to the statutory prerequisite that the claimant or insured must be a resident of New Jersey at the time of the insured event.

Counsel for the parties agree that a reading of § 12 of the Guaranty Association Act supports the conclusion that a party claiming under the act has but one residence. Section 12 reads, in pertinent part, as follows:

> 17:30A–12. *Priority of claim of associations in other states.*
>
> Any person having a covered claim which may be recovered from more than one insurance guaranty association or its equivalent shall seek recovery first from the association of the place of residence of the insured at the time of the insured event except that if it is a first party claim for damage to property with a permanent location, he shall seek recovery first from the association of the location of the property. * * *

Counsel for the Association argues that a corporation is a resident only of the state of its incorporation, as that concept is used in the Guaranty Association Act. Counsel for the claimant replies that plaintiff's one place of residence is New Jersey. Eastern asserts that the character and extent of its activities in New Jersey "make it appropriate" to consider it a resident of this State. Eastern points to the maintenance of both principal and executive offices here, and to the fact that it has done business here continuously since the authorization issued July 20, 1972. Notable emphasis is also placed upon the fact that Eastern has filed New Jersey corporation business tax returns for the years 1972 through 1976, which reflect that 100% of the net worth of the cor-

poration has been allocated to its situs in New Jersey. Additionally, Eastern asserts that it does not now nor did it ever maintain a place of business in Delaware.

The New Jersey Property-Liability Insurance Guaranty Association Act, *N. J. S. A.* 17:30A–1 *et seq.,* is not accompanied with a legislative history. In the absence of legislative reports or debates the court is obliged to analyze the language of the statute in the context of the historical circumstances surrounding its enactment. See *Salz v. State House Commission,* 18 *N. J.* 106 (1955) ; *Matawan Borough v. Monmouth Cty. Tax Bd.,* 51 *N. J.* 291, 299 (1968). The reason of the law — that is, the motive which led to the making of it — is one of the most certain means of establishing the true sense of its terms. See *Caputo v. The Best Foods,* 17 *N. J.* 259, 264 (1955). The passage of the Guaranty Association Act (*L.* 1974, *c.* 17, § 1, eff. April 11, 1974), was the Legislature's response to the judicial declaration of insolvency of several property-liability insurance companies. Thousands of claimants and policy holders in New Jersey were left without protection or recourse. The legislative intent of this remedial legislation is declared in the purpose clause of the statute:

> 17:30A–2. *Purpose*
>
> a. The purpose of this act is to provide a mechanism for the payment of covered claims under certain insurance policies, to avoid excessive delay in payment, to avoid financial loss to claimants or policyholders because of the insolvency of an insurer, to assist in the detection and prevention of insurer insolvencies, and to provide an association to assess the cost of such protection among insurers.

To carry out the multiple purposes of the statute, the Legislature created a private, nonprofit, unincorporated legal entity known as the New Jersey Property-Liability Insurance Guaranty Association. Its membership is comprised of persons who write all kinds of direct insurance, with exceptions not relevant, admitted or authorized to trans-

act the business of insurance in this State. *N. J. S. A.* 17:30A–5(f) ; *N. J. S. A.* 17:30A–2(b).

The provisions of the Guaranty Association Act must be interpreted to protect policyholders and claimants and to advance their interests rather than the interests of the Association. See *New Jersey Property-Liability Ins. Guar. Ass'n v. Sheeran,* 137 *N. J. Super.* 345, 351 (App. Div. 1975) ; *Arnone v. Murphy,* 153 *N. J. Super.* 584, 592 (Law Div. 1977) ; *Broadway Bk. and Trust v. N. J. Prop.-Liab. Ins. Guar. Ass'n,* 146 *N. J. Super.* 80 (Law Div. 1976). The claimants and the claims which the statutory scheme was designed to protect are defined in § 5 of the statute, here excerpted in relevant part:

> 17:30A–5. *Definitions.*
> As used in this act:
> * * * * * * * * *
> d. 'Covered claim' means an unpaid claim, including one of unearned premiums, which arises out of and is within the coverage, and not in excess of the applicable limits of an insurance policy to which this act applies, issued by an insurer, if such insurer becomes an insolvent insurer after January 1, 1974, and (1) the claimant or insured is a resident of this State at the time of the insured event; or (2) the property from which the claim arises is permanently located in this State. * * *

There are countless cases in both state and federal reports which define, in various legal and factual contexts, the concepts of "residence" and "domicile" for both natural persons and for corporations. No opinion more comprehensively explores the subject with reference to corporate entities than that of *State v. Garford Trucking, Inc.,* 41 *N. J.* 346 (1950), from which the following paragraphs are drawn:

> A corporation created and existing under the laws of New Jersey may have a "commercial domicile" or "business *situs*" elsewhere for taxation and other purposes; but it is nonetheless domiciled and resident in the state of its creation, for a corporation is domiciled in the state or sovereignty under which it has its being, and there also it has the residence which is inseparable

from domicile. A corporation lives and dwells in the jurisdiction whence it derives its existence, although it engages in business elsewhere under local authority. A corporate entity "must dwell in the place of its creation, and cannot migrate to another sovereignty." *Bank of Augusta v. Earle,* 13 Pet. 519, 588, 10 L. Ed. 274, 308 (1839) (and other cases cited). In *Ex parte Schollenberger,* 96 U. S. 369, 377, 24 L. Ed. 853, 855 (1878), this was said: "'A corporation cannot change its residence or its citizenship. It can have its legal home only at the place where it is located by or under the authority of its charter; but it may by its agents transact business anywhere, unless prohibited by its charter or excluded by local laws.' (Citing cases.) 'By doing business away from their legal residence,' said Chief Justice Waite, corporations 'do not change their citizenship, but simply extend the field of their operations. They reside at home, but do business abroad.'" *Baltimore & Ohio R. Co. v. Koontz,* 104 U. S. 5, 11, 26 L. Ed. 643 (1881).

Then, in a reference apposite to the factual context of the case at bar, the Supreme Court observed:

A corporation is "an artificial being, and has no dwelling either in its office, its warehouses, its depots or its ships. Its domicile is the legal jurisdiction of its origin, irrespective of the residence of its officers or the place where its business is transacted." *Merrick v. Van Santvoord,* 34 N. Y. 208, 218 (1866) [4 N. J. at 352]

The Supreme Court concluded its analysis by noting that "'domicile' and 'residence' are not convertible terms, although they are sometimes used interchangeably in legislative expressions. The polestar in each case is the intention of the lawmaking authority." *Id.* at 353.

The most illuminating decision is that reported as *Red Star Express Lines v. DeStefano,* 104 N. J. Super. 102 (App. Div. 1968), in which the appellate court held (at 107) that, within the context of the Unsatisfied Claims and Judgment Fund Act, *N. J. S. A.* 39:6–62, the term "resident" is equated to domestic corporation, *i. e.,* a corporation chartered by the State of New Jersey. The rationale for that definition, citing *Fletcher, Cyclopedia of Private Corporations* (rev. ed. 1960), § 8301, was forth in the passage which follows:

> The general rule is that statutes granting powers, privileges and immunities to corporations without any qualifying words will be construed as meaning domestic corporations in the absence of a plain indication to the contrary. See 17 *Fletcher, op. cit.* Indeed, in some states that policy has been incorporated as a statutory rule of construction. [At 107]

The deference to be accorded the holding in the *Red Star Express* case is enhanced by the fact that Red Star Express Lines was a New York corporation authorized to do business in New Jersey. It operated a truck terminal here and registered some of its vehicles in New Jersey and some in New York. The State Treasurer resisted payment of a judgment which Red Star had recovered against De Stefano, an uninsured motorist. The statute which established the Unsatisfied Claim and Judgment Fund defined a "qualified person" entitled to payment from the Fund to be "a resident of this State or the owner of a motor vehicle registered in this State," or the resident of another jurisdiction which extended reciprocal rights to New Jersey residents. *N. J. S. A.* 39:6–62. Notwithstanding the recognition by the court of the "liberal interpretation" to be accorded the legislative design in creating the Fund, the appellate court denied relief, holding that Red Star was not a "resident", *i. e.,* a domestic corporation.

The Appellate Division noted that the "general rule" that a statute which grants powers, privileges and immunities to corporations without qualifying words shall be construed to mean domestic corporations was adopted by the Supreme Court in *State v. Garford Trucking, Inc., supra,* in which the court considered the registration provision of the Motor Vehicle Law, *N. J. S. A.* 39:3–15. 4 *N. J.* at 351. Also apposite is the opinion *In re Roche,* 16 *N. J.* 579 (1955), in which the Supreme Court declared (at 587) that an insurance company, domiciled in New York, and authorized to write insurance in New Jersey, "is plainly not a 'resident' of New Jersey in the statutory sense."

The reported opinions here collated make a greater contribution to the resolution of the pending motions than do citations which are advanced by plaintiff: the first interprets the federal diversity statute, 28 *U. S. C. A.* § 1332 (c), *National Equipment Rental, Ltd. v. Sanders,* 271 *F. Supp.* 756 (E. D. N. Y. 1967); the second explains the Minnesota One Act Statute, *M. S. A.* § 303.13, *United Barge Co. v. Logan Charter Service,* 237 *F. Supp.* 624 (D. Minn. 1964), and the third interprets the New Jersey Attachment Act of 1901, *Brand v. Auto Service Co.,* 75 *N. J. L.* 230, 233 (Sup. Ct. 1907). The cases cited confirm the point that the term "resident" may have divers meanings, depending upon the statute under review. By contrast, the three "Fund" cases, *Sullivan v. Saylor,* 79 *N. J. Super.* 1 (App. Div. 1963); *Continos v. Parsekian,* 68 *N. J. Super.* 54 (App. Div. 1961), and *Red Star Express Lines v. De Stefano, supra,* interpreted and applied provisions of a statutory scheme, the Unsatisfied Claim and Judgment Fund Act, so homogeneous both in genesis and administration with that of the Guaranty Association Act that the two statutes may be considered *in pari materia.* Under both schemes a fund from which claims may be paid is established through insurance premiums paid on policies written in the State of New Jersey. Under the Unsatisfied Claim and Judgment Fund Act a portion of the premium from policies issued on vehicles registered in New Jersey goes into the Fund, *N. J. S. A.* 39:6–63; under the Guaranty Association Act a surcharge is levied on premiums paid on policies issued in New Jersey, *N. J. S. A.* 17:30A–8 and *N. J. A. C.* 11:1–6.1.

Apart from the central issue of residence-domicile of a corporation, our courts have noted that an important consideration in ruling on eligibility of a claimant is that of contribution to the Fund. See *Red Star Express Lines v. De Stefano, supra,* 104 *N. J. Super.* at 108, and *Sullivan v. Saylor, supra,* 79 *N. J. Super.* at p. 6. In this connection, although counsel for Eastern asserts that it indirectly

contributed to the Fund, it appears undisputed that the policy of insurance which forms the basis of Eastern's claim in the pending litigation was issued in New York. Thus, in paying its premium Eastern was not surcharged for and it did not contribute to the fund maintained by New Jersey established by the Guaranty Association Act. Moreover, § 12 of the Guaranty Association Act, quoted *infra,* directs a claimant first to the state association which has received the benefits of a surcharge upon the insurance policy from which the claim arises.[1]

Eastern also contends that the Legislature specifically distinguished between residence and domicile and intended to use the "common, broad meaning of residence as opposed to to domicile," citing *N. J. S. A.* 17:30A–16. The subsection of the Guaranty Association Act here cited refers to the delinquency proceedings to be followed when the *insurer* is domiciled, not in this State but in a state which provides a reciprocal remedy. Aside from the inappropriate statutory reference, Eastern's advocacy of an interpretation which would sever the residence of a corporate entity from its domicile finds no support in the recent descisional law. To the contrary, the Appellate Division in the *Red Star Express Lines* opinion specifically opted for the general rules of statutory construction which favored a narrow interpretation of the term "resident" and equated it with that of "domicile." 104 *N. J. Super.* at 108.

---

[1]Eastern hypothesizes a situation wherein a corporation could qualify as a claimant under the New Jersey statute even though it had not contributed to the Fund on the policy which gives rise to its claim. Section 12 of the Guaranty Association Act directs that a claim for damage to property with a permanent location be filed in the state in which the property is located. It would be in the remote situation that a corporation would file first in New Jersey on a claim arising from loss to property with no permanent location. Such imagined out-of-the-way cases do not derogate from the plain purpose of the statutory scheme to limit claimants to residents/contributors to the Fund.

Eastern invokes the principle of equal protection of the Fourteenth Amendment of the Constitution, citing, among other cases, *Conn. General Co. v. Johnson,* 303 *U. S.* 77, 58 *S. Ct.* 436, 82 *L. Ed.* 673 (1938), and *WHYY v. Glassboro,* 393 *U. S.* 117, 89 *S. Ct.* 286, 21 *L. Ed.* 2d 242 (1968). Eastern's counsel recognizes that the point raised calls for an application of the "rationale basis" test to support any distinction in a state's treatment between domestic and foreign corporations. The structure of the legislative scheme outlined *infra,* with particular reference the priority of filing claims, impart elements of rationality and pragmatism which surmount the equal protection challenge. The statutory qualification that a claimant or insured be a resident of this State, § 5(d), must be read in tandem with the priority of claim provision, § 12. The requirement that a person shall seek recovery first from the association of the place of residence of the insured appears designed to direct a claimant first to the state association which has received the benefits of the surcharge upon the insurance policy from which the claim arises. Such a rationale dispels any suggestion of arbitrary or capricious motivation. Moreover, apart from residency, the statute provides an alternative basis for qualification, that is, against the association of the location of the property from which the claim arises. Section 12 of the Guaranty Association Act concludes with the words "if recovery is denied or deferred by the association, a person may proceed to recover from any other insurance guaranty association or its equivalent from which recovery may be legally sought." *N. J. S. A.* 17:30A–12.[2]

Lastly, Eastern attempts to salvage a qualified status by arguing that the character and extent of its activities in New

---

[2]Delaware has adopted the model statute in which the definition of the term "covered claim" is identical to that of the New Jersey statute. The Delaware Guaranty Act also incorporates a priority of claims section, using the same language as § 12 of the New Jersey statute. 18 *Del. Code,* c. 42, § 4201 *et seq.*

Jersey make it appropriate to consider it a resident of this State. The identical argument was advanced in *Red Star Express Lines v. De Stefano, supra,* in which case the contacts and relationships of the New York corporation therein were as extensive both quantitatively and qualitatively as are Eastern's in the case at bar. The "roots" apparently did not go deep enough into New Jersey's soil, for the appellate court was not deterred from its adverse determination as framed in the passage which follows:

> Nor are we persuaded that the character and extent of plaintiff's activities in this State are such as to require a different conclusion. True, plaintiff has for some time paid, and is presently paying, its share of the operating costs of state and local government, and has indirectly contributed to the Fund through insurance premiums it pays upon its New Jersey-registered vehicles. *N. J. S. A.* 39:6-63. There is, of course, no such contribution out of insurance premiums paid on New York-registered vehicles. The fact is that it chose the protection of New York incorporation and not that of New Jersey. Moreover, it chose to register the tractor-trailer unit in question there rather than in this State. [104 *N. J. Super.* at 108]

 It is the conclusion of this court that the Legislature, in extending the benefits of the Guaranty Association Act to a resident of this State, intended to use the term "resident" in the usual sense, *i. e.,* a domestic corporation. Plaintiff Eastern is not a domestic corporation for it has seen fit to acquire the advantages of a Delaware incorporation which necessitated authorization from our Secretary of State to conduct business within New Jersey. A foreign corporation remains a resident of the state of its incorporation though it holds a certificate of authority to do business in another state. *Kenny v. Duro-Test Corp.,* 91 *F. Supp.* 633, 634 (D. N. J. 1950).

On the authorities cited and the reasoning set forth, the motion of plaintiff for an order declaring its claim to fall within the statutory definition of "covered claim" as to the residency component thereof is denied. The motion of defendant is granted.